**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| LORETTA FLYNN-MURPHY, individually and on behalf of all others similarly situated, *et al.*, | Civil Action No. 20-cv-14464 |
| *Plaintiffs*, |  |
| v. | **OPINION** |
| JAGUAR LAND ROVER NORTH AMERICA, LLC, |  |
| *Defendant*. |  |

**John Michael Vazquez, U.S.D.J.**

This class action lawsuit is premised on Plaintiffs' allegations that Defendant knew that a component of its motor vehicles would eventually fail but did not disclose this purported defect to consumers. Presently before the Court is a motion to dismiss the Amended Complaint filed by Defendant Jaguar Land Rover North America, LLC. D.E. 25. Plaintiffs filed a brief in opposition, D.E. 30, to which Defendant replied, D.E. 33. The Court reviewed the parties' submissions[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, Defendant's motion to dismiss is **GRANTED**.

---

[1] Defendant's brief in support of its motion (D.E. 25-1) will be referred to as "Def. Br."; Plaintiffs' opposition brief (D.E. 30) will be referred to as "Plfs. Opp."; and Defendant's reply (D.E. 33) will be referred to as "Def. Reply."

## I.   FACTUAL BACKGROUND[2] & PROCEDURAL HISTORY

In this putative class action, Plaintiffs owned a sport utility vehicle manufactured by Defendant.  Am. Compl. ¶¶ 10, 14, 18, 22, 26, 30, 34, 38, 42.  Plaintiffs did not purchase their vehicles directly from Defendant.  Instead, Plaintiffs Flynn-Murphy, Cohn, McNew, Kabba, De La Torre, Darbenzio, and Davies purchased their vehicles from a Jaguar Land Rover North America ("JLRNA") authorized dealer.  *Id.* ¶¶ 10, 14, 18, 22, 26, 38, 42.  Plaintiff Gonzalez purchased his vehicle from a federal credit union, and Wilbur purchased his vehicle from an Audi dealership.  *Id.* ¶¶ 30, 34.  After a few years, each Plaintiff's vehicle experienced a turbocharger failure and most Plaintiffs paid out of pocket to replace or repair the turbocharger.  *Id.* ¶¶ 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31, 35, 37, 39, 43, 45.  Plaintiffs Gonzalez and Darbenzio, however, could not afford to repair the defective turbocharger so their vehicles are no longer fully functional.  *Id.* ¶ 33, 41.  Plaintiffs contend the turbochargers in all Class Vehicles are defective.[3]

The Class Vehicles are all equipped with a 2.0 Liter 4-cylinder gas engine with a turbocharger.  *Id.* ¶¶ 68.  The turbocharger is a component of the engine that essentially allows smaller engines to perform like bigger ones by forcing air into the engine.  *Id.* ¶ 62.  Turbochargers provide power to the engine but also improve fuel economy and emissions.  *Id.* ¶¶ 60, 63.  Plaintiffs allege that for the Class Vehicles, Defendant utilized lighter and less durable materials for the turbochargers than it did for a previous engine assembly.  Specifically, Defendant used a single

---

[2] The factual background is taken from Plaintiffs' Amended Complaint ("Am. Compl.").  D.E. 18. When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

[3] Plaintiffs allege that the following vehicles encompass the "Class Vehicles": model year 2012 through 2017 2.0 Liter Land Rover Range Rover Evoque; model year 2015 through 2017 2.0 Liter Land Rover Discovery Sport; and model year 2013 through 2015 2.0 Liter Land Rover LR2.  Am. Compl. ¶ 1.

piece for the allegedly defective turbocharger rather than two.  *Id.* ¶ 72.  Plaintiffs also allege that Defendant chose to place the turbocharger further into the engine and powertrain than in previous models.  *Id.*  Due to these changes, Defendant allegedly knew or should have known that the turbochargers were not adequate, were "defective, and were subject to premature and catastrophic failure."  *Id.* ¶ 74.  The Court discusses the bases for Defendant's purported knowledge of the defect in detail in the Analysis section below.  Ultimately, Plaintiffs maintain that Defendant knew of and concealed this turbocharger defect at the time of each Plaintiff's purchase and knew that the defect would only manifest after Defendant's express warranties expired.  *Id.* ¶¶ 74-109.

As to the relevant warranties, "Defendant's basic New Vehicle Limited Warranty provides bumper-to-bumper coverage for four years or 50,000 miles during which time Defendant will repair or replace components defective in materials or workmanship" (the "Limited Warranty").  *Id.* ¶ 98.  There are also two governmentally mandated express warranties at issue: the Federal Emissions Control System Warranties and the California Emissions Control Warranties.  *Id.* ¶ 99.  No Plaintiff alleges that their turbocharger defect manifested within the time or mileage limitations of the Limited Warranty or either governmentally mandated warranty.

After their turbochargers failed, Plaintiffs Flynn-Murphy, Cohn and McNew filed the initial class action Complaint on October 14, 2020.  D.E. 1.  On behalf of a nationwide class and a New Jersey sub-class, the Complaint asserted claims for fraud, breach of contract, negligent misrepresentation, breach of the express and implied warranties, a violation of the Magnuson-Moss Warranty Act ("MMWA"), unjust enrichment, and a violation of the New Jersey Consumer Fraud Act ("NJCFA").  Plaintiff Cohn also asserted a claim on behalf of a Michigan sub-class alleging a violation of the Michigan Consumer Protection Act; Plaintiff McNew asserted a claim

on behalf of an Oklahoma sub-class alleging a violation of the Oklahoma Consumer Protection Act. *Id.* Defendant responded with a motion to dismiss. D.E. 11.

On February 15, 2021, Plaintiffs filed an Amended Complaint. D.E. 18. The Amended Complaint includes six new Plaintiffs, new factual allegations, and asserts consumer protection act claims on behalf of sub-classes associated with residents of California, Colorado, and Texas. *Id.* In light of the Amended Complaint, the Court terminated Defendant's pending motion to dismiss, D.E. 19, and Defendant subsequently filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). D.E. 25.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual allegations to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210.

### III.   ANALYSIS

#### A.  Choice of Law

In the Amended Complaint, Plaintiffs allege that New Jersey law applies to their claims "regardless of the place of [Plaintiffs'] purchase or residence." Am. Compl. ¶¶ 117-18.  Defendant does not challenge this allegation for purposes of the instant motion, and argues that under New Jersey law, the Amended Complaint should be dismissed. Def. Br. at 7 n.6.  In their opposition brief, however, Plaintiffs fail to provide a choice of law analysis yet argue that they adequately plead claims under state law other than New Jersey.  *See* Plfs. Br. at 18 (using state law outside of New Jersey to respond to Defendant's arguments to dismiss the breach of contract claim); 35 (contending that by not addressing states other than New Jersey, Defendant waived its right to argue that the fraud and negligent misrepresentation claims were inadequately pled under other states' laws).

A choice of law analysis is a fact intensive inquiry that may not be suited for a motion to dismiss.  *See, e.g.*, *Powell v. Subaru of Am., Inc.*, 502 F. Supp. 3d 856, 875 (D.N.J. 2020) ("The Court notes that 'it can be inappropriate or impossible for a court to conduct a choice of law analysis at the motion to dismiss stage when little or no discovery has taken place.'" (quoting *Synder v. Farnam Cos., Inc.*, 792 F. Supp. 2d 712, 717 (D.N.J. 2011))).  Here, the parties provide no choice of law analysis.  Accordingly, the Court will not decide any choice of law issues at this time.  Moreover, because Plaintiffs alleged that New Jersey law applies to all their claims in the Amended Complaint, the Court will only apply New Jersey law to decide the instant motion.  It is not appropriate for Plaintiffs to plead that New Jersey law applies then, without providing any choice of law analysis, use purported differences in state law to overcome pleading deficiencies in their own pleading.

### B. Breach of Warranty Claims

#### 1. Express Warranty Claims (Count VI)

To state a claim for breach of an express warranty under New Jersey law, a plaintiff must allege "(1) that Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." *Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*, 945 F. Supp. 2d 543, 568 (D.N.J. 2013) (citing N.J. Stat. Ann. § 12A:2-313). Here, Defendant's Limited Warranty "provides bumper-to-bumper coverage for four years or 50,000 miles during which time Defendant will repair or replace components defective in materials or workmanship." Am. Compl. ¶ 98. Under the Limited Warranty, Defendant agreed to correct, without charge, "defects in factory-supplied materials or factory workmanship . . . upon presentment for service." *See* Passport to Service at 7, D.E. 11-2.[4] Certain Plaintiffs' vehicles were also covered under the two governmentally mandated warranties; the Federal Emissions Control System Warranties and the California Emissions Control Warranties. *Id.* ¶¶ 99-101. Plaintiffs, however, do not allege that their turbochargers failed within

---

[4] Defendant provided a copy of the 2015 Passport to Service, which sets forth the applicable warranties, as an exhibit to its initial motion to dismiss and asks the Court to rely on this document in deciding this motion. In deciding a Rule 12(b)(6) motion, a court ordinarily considers only the factual allegations in the pleading, exhibits attached to the complaint, and matters of public record. *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004). A court may also rely on "a document *integral to or explicitly relied* upon in the complaint" to decide a Rule 12(b)(6) motion. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (emphasis in original) (citation omitted). A document is integral if a "claim would not exist but-for the existence of the document." *Dix v. Total Petrochemicals USA, Inc.*, No. 10-3196, 2011 WL 2474215, at *1 (D.N.J. June 20, 2011). In this instance, the Passport to Service is integral to Plaintiffs' warranty claims. Consequently, the Court will consider the contents of the Passport to Service to decide Plaintiffs' breach of warranty claims.

the time or mileage limits of any of the express warranties.  Accordingly, on its face, Plaintiffs do not adequately plead a claim for breach of an express warranty in the Amended Complaint.

Plaintiffs, however, allege that the turbocharger defect was latent.  *See, e.g.*, Am. Compl. ¶ 163.  But "latent defects discovered after the term of an express warranty cannot serve [as] a basis for a claim for the breach of an express warranty."  *Kuzian v. Electrolux Home Prods., Inc.*, 937 F. Supp. 2d 599, 611 (D.N.J. 2013).  As a result, Plaintiffs' allegations as to a latent defect also do not sufficiently support a breach of express warranty claim.

Next, Plaintiffs contend that the turbochargers were inherently defective at purchase. Plaintiffs allege that this is different from a latent defect and that Defendant should have repaired the turbochargers under the express warranty when Plaintiffs presented their cars for service within the warranty limitations.  Plfs. Opp. at 11; Am. Compl. ¶ 167.  While Plaintiffs indicate that they brought their cars to JLRNA dealers for service within the warranty limitations, Plaintiffs do not appear to have had complaints about their turbochargers or problems associated with the turbocharger during those service visits.  Thus, there was no "presentment for service" for the turbochargers during the warranty periods, as required by the Limited Warranty.  *See* Passport to Service at 7.  Moreover, Plaintiffs do not plead that the turbocharger failure was inevitable or that it would occur in every car.  Accordingly, "Plaintiff[s] do[] not present and the Court is unaware of any authority to support the proposition that a seller has the obligation to both provide warranty service when necessary and also discover for the buyer the problem prompting such service." *McQueen v. BMW of N. Am., LLC*, No. 12-6674, 2014 WL 656619, at *6 (D.N.J. Feb. 20, 2014).

Plaintiffs seem to rely on *Payne v. Fujifilm U.S.A., Inc.*, No. 07-385, 2007 WL 4591281 (D.N.J. Dec. 28, 2007) to support this argument about an inherent defect.  Plfs. Opp. at 11 n.10. In *Payne*, the Court determined that the pleading alleged sufficient facts through which the plaintiff

*could* establish that the time limitation of the warranty at issue was unconscionable  As a result, the court denied the motion to dismiss as to the plaintiff's breach of express warranties claim. *Payne*, 2007 WL 4591281, at *5.  Although Plaintiffs also plead that the Limited Warranty here is unconscionable (which is addressed below), unconscionability is a different issue than inherent defect.  Therefore, *Payne* is inapposite.  Plaintiffs also rely on *Nelson v. Nissan North America, Inc.*, 894 F. Supp. 2d 558 (D.N.J. 2012) as to an inherent defect.  Plfs. Opp. at 11 n.10.  In *Nelson*, although not all the plaintiffs sought service within the warranty period, the plaintiffs alleged that "Nissan knew that the vehicles had defective transmissions" and all the plaintiffs "allegedly experienced symptoms of the defect during the warranty period."  *Nelson*, 894 F. Supp. 2d at 564-65.  In comparison, Plaintiffs here do not allege that they had any problems with their turbochargers during the warranty period.  Thus, *Nelson* is factually distinguishable and, moreover, does not address an inherent defect.

Plaintiffs also allege that Defendant knew or should have known that the turbochargers would prematurely fail, and that Defendant should have disclosed the problem or proactively issued a recall to ensure the defect did not manifest.  Am. Compl. ¶¶ 77, 80, 87.  But nothing in the Amended Complaint leads to such an inference.   According to Plaintiffs, Defendant's purported knowledge is based on industry knowledge and experience.  Specifically, Plaintiffs point out that Ford, from whom Defendant got the turbocharged engine, used more expensive components and a more durable engine design than Defendant for two of its SUVs.[5]  Am. Compl. ¶¶ 68-73.  Defendant allegedly made changes to the Ford-designed engine to cut costs and weight. *Id.* ¶ 72.  Plaintiffs highlight the differences between Defendant's engine and the Ford engine to

---

[5] The 2.0-liter engine is a "Ford-designed 'EcoBoost' engine and was one of the continuing legacies of Ford's brief ownership of Land Rover" from 2000-2008.  Am. Compl. ¶ 68.

show that Defendant's turbocharger "was manifestly inapt."  Plfs. Opp. at 31.  But Plaintiff fails to plausibly establish that a different design and parts leads to the reasonable inference that Defendant knew its engine was inherently defective.

Plaintiffs also cite to a study published by SAE International, which identified that cracks and gasket sealing features "are often observed" in turbocharged gasoline engines.  *Id.* ¶ 78.  But the fact that an engineering society identified that the defect could occur does not establish that Defendant should have known of the "widespread, premature failure" that Plaintiffs allege here. Moreover, the SEA International study appears to have generally considered "turbo charged gasoline engines" that are "popular" in the passenger car market.  *Id.* The study does not appear to specifically focus on Defendant's turbocharged engines, engines in SUVs, or anything that could specifically alert Defendant of a widespread issue.

In addition, Plaintiffs rely on complaints to the National Highway Traffic Safety Administration ("NHTSA"), alleging that these are "[o]ne of the key sources of Defendant's knowledge."  Am. Compl. ¶ 90.  Plaintiffs provide a sampling, most of which involve incidents that occurred after Plaintiffs purchased their vehicles and many that occurred at approximately the same time as Plaintiffs' turbocharger failures.   Thus, these complaints are insufficient to reasonably infer that Defendant knew there was a turbocharger defect at the time of any Plaintiffs' purchase.

Finally, Plaintiffs plead, "[u]pon information and belief," that within the first few years of selling the Class Vehicles, there was an increase in warranty claims and customer complaints about the defective turbocharger.  Am. Compl. ¶¶ 92-93.  A plaintiff may plead facts upon information and belief "where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control – so long as there are no boilerplate and conclusory allegations

and plaintiffs accompany their legal theory with factual allegations that make their theoretically viable claim plausible." *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267-68 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002)) (internal punctuation omitted).  Although warranty claims and customer complaints would be in the exclusive possession of Defendant, Plaintiffs other allegations do not make the upon information and belief allegations plausible.  Plaintiffs' own experiences demonstrate that the turbocharger failures did not occur within the "first few years."  Similarly, most of the NHTSA incidents did not occur within the first few years.  Moreover, Plaintiffs plead that the complaints were made via all media, including social media, *see* Am. Compl. ¶ 93, yet fail to identify a single public complaint to substantiate their allegations.  Therefore, the paragraphs pled upon information and belief are not sufficiently alleged.

Plaintiffs contend that individually, each of these bases are sufficient to establish that Defendant should have known about the defect.  Plfs. Opp. at 33.  For the reasons discussed above, the Court disagrees.  Plaintiffs also contend that the Court should consider this information cumulatively to infer that Defendant knew of the defect.  *Id.*  The Court again disagrees.  The Court is aware that courts have used similar allegations (*i.e.,* Defendant's industry experience, SAE studies, consumer and NHTSA complaints) to collectively infer a defendant's knowledge of a defect.  Plaintiffs' allegations, however, fall short of the allegations in those cases.  *See, e.g.*, *Amato v. Subaru of Am., Inc.*, No. 18-16118, 2019 WL 6607148, at *16 (D.N.J. Dec. 5, 2019) (explaining that pre-sale knowledge was sufficiently alleged through NHTSA complaints, consumer complaints, and "Defendants' redesign and/or manufacturing change to the class engines"); *Kearney v. Bayerische Motoren Werke Aktiengesellschaft*, No. 17-13544, 2018 WL 4144683, at *11 (D.N.J. Aug. 29, 2018) (concluding that the plaintiffs sufficiently alleged knowledge based on

numerous NHTSA complaints before the plaintiffs' purchases, "pre-sale and post-sale complaint testing [that] revealed the problem, and complaints and warranty data from BMW dealerships). As a result, Plaintiffs fail to adequately plead knowledge of a known defect at the time of any Plaintiff's vehicle purchase.  In sum, Plaintiffs fail to plausibly plead a breach of express warranty claim because their turbochargers did not fail within the time or mileage limitations of the express warranties.

Plaintiffs, however, counter that they sufficiently allege that Defendant's warranty limitations are unconscionable.  Plfs. Opp. at 7-10.  "[C]ourts may refuse to enforce contracts, or discrete contract provisions, that are unconscionable."  *Rodriguez v. Raymours Furniture Co., Inc.*, 138 A.3d 528, 541 (N.J. 2016).  To determine whether a contract is unconscionable, a court evaluates both procedural and substantive unconscionability.  *Id.*  Procedural unconscionability "refers to unfairness in the formation of the contract, and may be shown by a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process." *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 595 (D.N.J. 2016) (quoting M*uhammad v. Cty. Bank of Rehoboth Beach*, 912 A.2d 88, 96 (N.J. 2006)) (internal quotations omitted). Substantive unconscionability occurs when a contract term is "excessively disproportionate and involves an exchange of obligations so one-sided as to shock the court's conscience."  *Id.* (quoting *Delta Funding Corp. v. Harris*, 912 A.2d 104, 120 (N.J. 2006)) (internal quotations omitted). Finally, deciding whether a contract is unconscionable is a fact specific inquiry.  *Delta Funding Corp.*, 912 A.2d at 110.  Courts generally apply "a sliding-scale approach to determine overall unconscionability, considering the relative levels of both procedural and substantive unconscionability."  *Id.*

Plaintiffs contend that they plead substantive unconscionability because Defendant knew the turbocharger would fail after the limitations of the express warranties but did not inform consumers.  Plfs. Opp. at 8; Am. Compl. ¶ 169.  "[A] manufacturer's knowledge that a part may ultimately fail does not, alone, make a time/mileage limitation unconscionable."  *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 256 (D.N.J. 2020) (quoting *Merkin v. Honda N. Am., Inc.*, No. 17-3625, 2017 WL 5309623, at *5 (D.N.J. Nov. 13, 2017)).  Rather, a plaintiff must plead additional facts to demonstrate unconscionability.  *See, e.g.*, *In re Volkswagen Timing Chain Prod. Liability Litig.*, No. 16-2765, 2017 WL 1902160, at *12 (D.N.J. May 8, 2017) (finding that the plaintiffs sufficiently alleged unconscionability based, in part, on allegations that the defendant "was well aware of the defect" and knew of the defect at the time of sale); *Skeen v. BMW of N.A., LLC*, No. 13-1531, 2014 WL 283628, at *13 (D.N.J. Jan. 24, 2014) (concluding that allegations that manufacturer knew engine component would fail, manipulated the warranty terms to avoid paying for repair, and unfairly took advantage of its disparate bargaining power were sufficient to allege unconscionability); *Henderson v. Volvo Cars of N. Am., LLC*, No. 09-4146, 2010 WL 2925913, at *9 n.6 (D.N.J. July 21, 2020) (finding that allegations of knowledge that part would fail along with allegations regarding a gross disparity of bargaining power were sufficient to allege unconscionability).

As discussed, Plaintiffs fail to adequately plead that Defendant knew of the purported turbocharger defect at the time of sale.  As a result, Plaintiffs' unconscionability argument fails.

Defendant's motion to dismiss the express warranty claim is granted.

### 2.  Implied Warranty (Count V)

Next, Defendant seeks to dismiss Plaintiffs' implied warranty claim.  Def. Br. at 16-17. New Jersey law provides for implied warranties of merchantability and fitness for a particular

purpose.  *See* N.J. Stat. Ann. §§ 12A:2-314 (merchantability), 315 (fitness for a particular purpose).

However, "[t]he complete exclusion of implied warranties, including warranties of merchantability

and of fitness for a particular purpose, is specifically permitted."  *Gladden v. Cadillac Motor Car*

*Div., Gen. Motors Corp.*, 416 A.2d 394, (N.J. 1980) (citing N.J. Stat. Ann. § 12A:2-316).  To

disclaim these warranties, the written "language must be clear and conspicuous."  *Id.* (citing N.J.

Stat. Ann. § 12A:2-316).  For example, the disclaimer could say that "[t]here are no warranties

which extend beyond the description on the face hereof."  N.J. Stat. Ann. § 12A:2-316.

Here, the Passport to Service provides that the implied warranties of merchantability and

fitness

> ARE LIMITED, TO THE EXTENT ALLOWED BY LAW, TO
> THE TIME PERIOD COVERED BY THE WRITTEN
> WARRANTIES, OR TO THE APPLICABLE TIME PERIOD
> PROVIDED BY STATE LAW, WHICHEVER PERIOD IS
> SHORTER.

D.E. 11-2 at 9.  Thus, Defendant expressly limited these implied warranties.  As discussed,

Plaintiffs do not plausibly allege that their turbochargers failed within express warranty limitations.

Therefore, Plaintiffs fail to plausibly allege a breach of any implied warranties.

Plaintiffs again argue that they state an implied warranty claim because the warranty

limitations are unconscionable, and that Defendant had knowledge that the alleged defect existed

when the vehicles were purchased.  Plfs. Opp. at 15-16.  For the reasons discussed above, the Court

disagrees.

Plaintiffs' breach of implied warranties claim, therefore, is dismissed without prejudice.

### 3.  Magnuson-Moss Warranty Act Claim (Count VI)

Finally, Defendant contends that the MMWA claim fails because Plaintiffs do not state a

breach of express or implied warranties claim.  Def. Br. at 18-19.  "The MMWA provides a private

right of action in federal court for consumers who are 'damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation . . . under a written warranty, [or] implied warranty.'"  *Guardavacarro v. Home Depot*, No. 16-8796, 2017 WL 3393812, at *9 (D.N.J. Aug. 8, 2017) (quoting 15 U.S.C. § 2310(d)(1)).  "MMWA claims are coextensive with underlying state law breach of warranty claims and are therefore, dependent on, and derivative of, said state claims for survival in a motion to dismiss."  *Id.* (citing *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 254 (3d Cir. 2010)); *see also Tobin v. Samsung Elecs. Am., Inc.*, No. 18-12473, 2019 WL 1399557, at *7 (D.N.J. Mar. 27, 2019) (explaining that the plaintiff's MMWA claims "stand or fall with the claimant's express and implied warranty claims under state law") (internal quotation omitted).  Plaintiffs do not argue otherwise.  Plfs. Opp. at 16 (recognizing that Plaintiffs must plead a cause of action under state law to state a MMWA claim).

Because Plaintiffs' express and implied warranty claims are dismissed, the Court also dismisses Plaintiffs' MMWA claim.

### C.  Breach of Contract

Next, Defendant argues that Plaintiffs fail to state a breach of contract claim because, among other things, Plaintiffs fail to allege that they were parties to a contract with Defendant or were in privity with each other.  Def. Br. at 20-22.  To state a claim for breach of contract under New Jersey law, a party must allege, among other things, that "the parties entered into a contract." *Pollack v. Quick Quality Rests., Inc.*, 172 A.3d 568, 576 (N.J. App. Div. 2017) (citing *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016)); *see also Comly v. First Camden*, 36 A.2d 591, 593 (N.J. Sup. Ct. 1944) ("[I]t may be said that as a general rule an action on a contract cannot be maintained against a person who is not a party to it.").  Here, Plaintiffs did not purchase their vehicle from Defendant directly; instead, they largely bought their cars from authorized JLRNA

dealers.  *See, e.g.*, Am. Compl. ¶¶ 10, 34.  Accordingly, there is no direct contract between any Plaintiff and Defendant.

Plaintiffs respond that they are third-party beneficiaries of a contract between Defendant and the authorized JLRNA dealers, or that privity of contract exists with the contracting parties due to the relationship between the authorized dealers and Defendant.  *Id.* ¶¶ 144-45.  "Basic contract law requires parties to be in privity with each other in order for them to enforce the terms of a contract."  *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *8. Because Plaintiffs are not parties to a contract with Defendant, privity of contract does not exist.

Undeterred, Plaintiffs allege that privity of contract exists because the authorized dealers are Defendant's agents.  Am. Compl. ¶ 144.  Plaintiffs cite to several cases suggesting that a plaintiff may establish privity necessary to assert certain claims against a principal based on the conduct of an agent, but none of the cases address whether privity of *contract* can be established through an agency relationship pursuant to *New Jersey* law.  *See Zeno v. Ford Motor Co., Inc.*, 480 F. Supp. 2d 825, 841 (W.D. Pa. 2007) (applying Pennsylvania law when concluding that "[a]n agency relationship . . . may establish 'privity' for the purposes of bringing a breach of contract claim by virtue of a principal being bound by act of its agents in certain circumstances."); *Chin v. Chrysler Corp.*, No. 95-5569, 1997 U.S. Dist. LEXIS 24244, at *14 (D.N.J. Mar. 7, 1997) (concluding that allegations regarding agency relationship were sufficient to withstand a motion to dismiss implied warranty claim under various state's laws other than New Jersey); *In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II)*, No. 03-4558, 2010 WL 2813788, at *16 (D.N.J. July 9, 2010) (discussing privity requirements to assert implied warranty claim under California law); *Eteam, Inc. v. Hilton Worldwide Holdings, Inc.*, No. 15-5057, 2017 WL 2539395, at *4 (D.N.J. June 12, 2017) (addressing agency relationship within the context of multiple *tort* claims);

*In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936 (N.D. Cal. 2014) (considering agency relationship under New York law with respect to a fraud claim).  Thus, Plaintiffs fail to provide legal authority demonstrating that an agency relationship could create privity of contract between Plaintiffs and Defendant.

Plaintiffs also allege that they are third-party beneficiaries of "contracts between Defendant and its dealers concerning the sales or leases of the Class Vehicles."  Am. Compl. ¶ 145.  "[T]he intention of contracting parties to benefit an unnamed third party must be garnered from an examination of the contract and a consideration of the circumstances attendant to its execution." *Rieder Cmtys., Inc. v. Township of N. Brunswick*, 546 A.2d 563, 222 (N.J. App. Div. 1988); *see also Gold Mills, Inc. v. Orbit Processing Corp.*, 297 A.2d 203, 204 (N.J. Sup. Ct., Law Div. 1972) (explaining that unless intent that contract benefits a third party "can be derived from the contract or surrounding facts, a third party has no right of action under that contract").

Plaintiffs, however, fail to explain to which contract they were intended to be third-party beneficiaries.  To the contrary, the Amended Complaint does not clearly set forth which contract Defendant allegedly breached.  Plaintiffs instead mention the warranty agreements, purchase agreements between Plaintiffs and the authorized dealers, and agreements between Defendant and the authorized dealers.  Am. Compl. ¶¶ 145-46.  Further, in their opposition, Plaintiffs argue that "every purchase or lease of a Class Vehicle constituted a contract between the purchaser and Defendant."  Plfs. Opp. at 21.  But this does not make sense; Plaintiffs seem to be arguing that they were third-party beneficiaries to a contract in which they were an actual party.  Plaintiffs also seem to assert that they are the third-party beneficiaries to the warranty agreement, of which Defendant and the authorized dealers were parties.  *Id.* at 22.   In short, Plaintiffs' third-party beneficiary theory (or the contract on which it is based) is not entirely clear.

Plaintiffs, therefore, fail to identify any contract of which they are parties or have a legal authority to enforce.  Consequently, Plaintiffs' breach of contract claim is dismissed.

### D.  Unjust Enrichment (Count VII)

Defendant also seeks to dismiss Plaintiffs' unjust enrichment claim because Plaintiffs are indirect purchasers.  Def. Br. at 23-24.  Plaintiffs counter that they can pursue an unjust enrichment claim because a direct relationship is not required where "the defendant can plausibly be deemed a wrongdoer."  Plfs. Opp. at 24 (quoting *Julian v. TTE Tech., Inc.*, No. 20-2857, 2020 WL 6743912, at *6-7 (N.D. Ca. Nov. 17, 2020)).

"To establish a claim for unjust enrichment under New Jersey law, a plaintiff must allege 'both that defendant received a benefit and that retention of that benefit without payment would be unjust.'"  *Adamson v. Ortho-McNeil Pharm., Inc.*, 463 F. Supp. 2d 496, 505 (D.N.J. 2006) (quoting *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 554 (N.J. 1994)).  A direct relationship between the plaintiff and defendant is essential to an unjust enrichment claim.  *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 283 (D.N.J. 2011).  This requirement "is meant to protect innocent third-parties from liability" that "had absolutely no course of dealings with, and no other demonstrated connection to, the plaintiff."  *Stewart v. Beam Glob. Spirits & Wine, Inc.*, 877 F. Supp. 2d 192, 198, 200 (D.N.J. 2012).  But whether a direct relationship exists is "a term of art," and "will depend heavily on the facts of the individual case."  *DeFrank v. Samsung Elecs. Am., Inc.*, No. 19-21401, 2020 WL 6269277, at *23 (D.N.J. Oct. 26, 2020).  Accordingly, courts have determined that a direct relationship exists if a plaintiff plausibly pleads that the manufacturer is "something other than [an] innocent third-part[y]."  *Stewart*, 877 F. Supp. 2d at 200.  In *Stewart*, for example, the plaintiffs purchased the relevant products from a third-party retailer.  The *Stewart* court concluded that the plaintiffs stated an unjust enrichment claim against

the manufacturer defendants through allegations that the defendants "engaged in fraudulent conduct and misrepresented" the nature of the product at issue "through a direct nationwide advertising and marketing scheme." *Id.*; *see also DeFrank*, 2020 WL 6269277, at *23 (concluding that although the plaintiffs purchased the product from a third-party intermediary, the plaintiffs stated an unjust enrichment claim against a manufacturer based on plausible allegations that the manufacturer concealed a known defect that would render the product at issue inoperable and engaged in a false and misleading marketing campaign by failing to disclose the defect).

Here, Plaintiffs contend that they "provide extensive allegations as to the relationship between [Defendant] and its agent-dealerships." Plfs. Opp. at 25 (citing Am. Compl. ¶¶ 52-59). But these allegations do not sufficiently establish that Defendant is a wrongdoer. In the cases relied on by Plaintiffs, the plaintiffs included allegations demonstrating that the manufacturer was engaged in fraudulent or wrongful conduct. Because this Court has already determined that Plaintiffs failed to plausibly plead that Defendant knew of and failed to disclose the turbocharger defect at the time of sale, Plaintiffs do not plausibly plead that Defendant is something other than an innocent third-party.[6]

Plaintiffs, therefore, fail to sufficiently plead an unjust enrichment claim.

### E. Fraud and Negligent Misrepresentation Based Claims (Counts I, III, and VIII through XIV)

Plaintiffs' fraud and negligent misrepresentations claims are largely premised on an omission, that is, Defendant's purported failure to disclose that the turbocharger was defective and

---

[6] Defendant largely relies on this Court's opinion in *Grisafi v. Sony Electronics. Inc.*, No. 18-8494, 2019 WL 1930756 (D.N.J. Apr. 30, 2019) to argue that the unjust enrichment claim must be dismissed. Def. Br. at 23-24. In *Grisafi*, the Court dismissed the plaintiff's unjust enrichment claim because there was no direct relationship between Sony and the plaintiff. But in *Grisafi* the Court was not asked to decide – nor did it – whether the manufacturer had engaged in sufficient misconduct to support an unjust enrichment claim.

prone to premature failure. *See* Am. Compl. ¶¶ 135, 152, 216. Defendant seeks to dismiss these counts on numerous grounds, including because Defendant did not have a duty to disclose. Def. Br. at 35-39. To state a common law fraud claim under New Jersey law, a plaintiff must plead (1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon; and (5) resulting damages. *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997). An omission can amount to fraud if a party has a duty to disclose. *Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 546 (D.N.J. 2013). To state a negligent misrepresentation claim, a plaintiff must plead "that the defendant negligently made an incorrect statement upon which the plaintiff justifiably relied." *Argabright*, 201 F. Supp. 3d at 603. An omission may also form the basis of a negligent misrepresentation claim provided that "the breaching party owes an independent duty imposed by law." *Id.* (quoting *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 279-80 (N.J. 2002)). Under New Jersey law, however, "a party has no duty to disclose information to another party in a business transaction unless a fiduciary relationship exists between them, unless the transaction itself is fiduciary in nature, or unless one party 'expressly reposes a trust and confidence in the other.'" *N.J. Econ. Dev. Auth. v. Pavonia Rest., Inc.*, 725 A.2d 1133, 1139 (N.J. App. Div. 1998) (quoting *Berman v. Gurwicz*, 458 A.2d 1311, 1313 (N.J. Ch. Div. 1981)).

Here, Plaintiffs plead that Defendant owed a duty to disclose the defective turbocharger "because Defendant possessed superior and exclusive knowledge regarding the defect and the risks associated with the Turbocharger's failure." *See* Am. Compl. ¶ 151. Plaintiffs' allegations do not establish that a fiduciary relationship existed, that the relationship of buying a car from a dealership is fiduciary in nature, or that there is a special relationship between a car purchaser and manufacturer. Numerous courts in New Jersey have reached the same conclusion. *See Schechter*

*v. Hyundai Motor Am.*, No. 18-13634, 2020 WL 1528038, at *16 (D.N.J. Mar. 31, 2020) (finding no special or fiduciary relationship between plaintiff and manufacturer); *Glass v. BMW of N. Am., LLC*, No. 10-5259, 2011 WL 6887721, at *17 n.24 (D.N.J. Dec. 29, 2011) (concluding that the court could not find that there was a duty to disclose the alleged defect because the plaintiff did not allege the existence of a fiduciary or special relationship between herself and the manufacturer). In fact, courts have even rejected the precise allegation that Plaintiffs rely on here. *See Majdipour v. Jaguar Land Rover N. Am., LLC*, No. 12-7849, 2015 WL 1270958, at *14 (D.N.J. Mar. 18, 2015) ("As discussed, New Jersey law does not categorically imply a duty to disclose on the basis of a manufacturer's superior knowledge in cases where disclosure is not necessary to correct a prior statement and the parties are not in a special relationship.").

Plaintiffs continue that Defendant had a duty to disclose the turbocharger defect because it previously made a partial disclosure. Plfs. Opp. at 34; *see also* Am. Compl. ¶ 114 (alleging that Defendant had a duty to make full, rather than partial disclosures about the turbocharger defect). "Where a claim for fraud is based on silence or concealment, New Jersey courts will not imply a duty to disclose, unless such disclosure is necessary to make a previous statement true or the parties share a 'special relationship.'" *Majdipour*, 2015 WL 1270958, at *8; *see also Schechter*, 2020 WL 1528038, at *16 ("In addition, a plaintiff can assert an omission-based negligent misrepresentation claim in connection with a concealed defect 'when a manufacturer] has made a partial disclosure.'" (quoting *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *20).

Plaintiffs point to some of Defendant's marketing materials from 2014-2016 that tout the benefits of the 4-cylinder engine with the advanced turbocharger as a "key value of the Class Vehicles." *See* Am. Compl. ¶¶ 94-96. Plaintiffs contend that these are partial disclosures because

Defendant failed to disclose that the benefits of the turbocharged engine would be offset by the defect. Plfs. Opp. at 34. But as discussed, Plaintiffs fail to sufficiently allege that Defendant knew of the alleged defect when any Plaintiff purchased their vehicle. Without this knowledge, Defendant could not have corrected any partial disclosure, even if the identified marketing materials amount to a partial disclosure. Plaintiffs also do not allege that any Plaintiff saw, let alone relied on these marketing materials when purchasing their vehicles. *See Amato*, 2019 WL 6607148, at *16 ("The Court finds that Plaintiffs' sufficiently allege the general content of the misrepresentation, who made the misrepresentation, where it was made, and when Plaintiffs were exposed to that misrepresentation.").

Relatedly, Defendant contends that all of Plaintiffs' fraud-based claims, including the state specific consumer fraud claims, must be dismissed for failure to adhere to Federal Rule of Civil Procedure 9(b). Def. Br. at 25-26. Namely, Defendant argues that Plaintiffs fail to allege that they saw or relied on any actionable misrepresentations before purchasing their vehicles. *Id.*

"Independent of the standard applicable to Rule 12(b)(6) motions, Rule 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 311 F.3d at 216. Thus, pursuant to Rule 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake . . . [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A party alleging fraud must therefore support its allegations with factual details such as "the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016). Accordingly, "[t]o satisfy the particularity standard, 'the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of

substantiation into a fraud allegation.'" *Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).  This heightened standard is designed to "ensure that defendants are placed on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of fraud." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (internal quotation marks omitted).

As discussed, no Plaintiff pleads that he or she relied on the relevant marketing materials or the fact that their vehicle contained the 4-cylinder turbocharged engine as a reason for purchasing their vehicle.  In addition, Plaintiffs plead that they all purchased their vehicle "based on the representation that the vehicle was safe and reliable, . . . based on representations made by . . . Defendant, including some *like those* discussed below." *See* Am. Compl. ¶ 10.  Again, the identified marketing materials tout the benefits of the turbocharged 4-cylinder engine.  Am. Compl. ¶¶ 96-96.  The marketing materials highlighted by Plaintiffs in the Amended Complaint, however, do not address safety or reliability.  Without allegations demonstrating that Plaintiffs relied on the specific misrepresentations discussed in the Amended Complaint, Plaintiffs do not satisfy the Rule 9(b) pleading standards.  Plaintiffs' fraud and negligent misrepresentation claims, and their state consumer protection claims, are also dismissed on these grounds.

### F.  Equitable Relief

Plaintiffs seek, among other things, injunctive relief in the form of a comprehensive program to repair or replace turbochargers in the Class Vehicles, compensatory damages, and restitution.  Am. Compl, Prayer for Relief.  Defendant maintains that Plaintiffs' claims for equitable relief should be dismissed.  Def. Br. at 37-38.  Specifically, Defendant argues that Plaintiffs are not entitled to restitution because they do not allege that a remedy at law is unavailable.  Defendant continues that Plaintiffs also fail to allege a sufficient likelihood of future

injury, such that injunctive relief is not appropriate. *Id.* Rule 8 provides that in a pleading, a party may demand different types of relief, including relief in the alternative. Fed. R. Civ. P. 8(a)(3). Accordingly, Plaintiff is entitled to seek injunctive relief and restitution. As for Defendant's argument that Plaintiffs fail to establish that they are entitled to such relief, the Court is dismissing the Amended Complaint for the reasons stated above. If Plaintiffs file an amended pleading that sufficiently states any claims, Defendants are free to raise their arguments at that time.[7]

## IV.    CONCLUSION

Defendant's motion to dismiss (D.E. 25) is **GRANTED**. Plaintiffs' Amended Complaint is dismissed without prejudice. Plaintiffs shall have thirty (30) days to file an amended complaint that cures the deficiencies noted herein. If Plaintiffs do not file an amended pleading within that time, the claims dismissed herein will be dismissed with prejudice. An appropriate Order accompanies this Opinion.

Dated: November 19, 2021

John Michael Vazquez, U.S.D.J.

---

[7] The Court notes that in arguing that Plaintiffs' claim for restitution should be dismissed, Defendant relies solely on a recent decision from the Ninth Circuit, *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020). *Sonner* is not binding on this Court, and it addressed the dismissal of a claim for restitution at a very different point in the case. Namely, the issue arose in *Sonner* when, after four years of litigation and two months before the trial, the plaintiff voluntarily abandoned a viable claim to avoid a jury trial. *Id.* at 838.