Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JENNIFER BULLARD, NATALIE BUSH, LEO CANIZARES, LYNN COHN, RAYMOND DARBENZIO, JAMES DAVIES, LILIANA DE LA TORRE, LORETTA FLYNN-MURPHY, WILLIAM GILCHRIST, JAIME GONZALEZ, EMILY HARRELL, TOM HERBENER, JEFFREY HERZOG, RODNEY HOWARD, MANAGAYA KABBA, BILL LIQUORI, KELLY MCNEW, ANGELA PICK, SYDNEY POSTLE, LOLITHA SHEPHERD, and JEFFREY WILBUR, individually and on behalf of all others similarly situated, | Civil Action No. 20-14464 |
|  | **OPINION** |
| *Plaintiffs*, |  |
| v. |  |
| JAGUAR LAND ROVER AUTOMOTIVE PLC, JAGUAR LAND ROVER LIMITED, and JAGUAR LAND ROVER NORTH AMERICA, LLC, |  |
| *Defendants*. |  |

**John Michael Vazquez, U.S.D.J.**

In this putative class action, Plaintiffs allege that Defendants knew that a turbocharger in certain motor vehicles would eventually fail but did not disclose the defect to consumers. Twenty-one plaintiffs, on behalf of themselves and those similarly situated (collectively, "Plaintiffs"), sue Jaguar Land Rover North America, LLC ("JLRNA"); Jaguar Land Rover Automotive PLC ("JLR PLC"); and Jaguar Land Rover Limited ("JLR Ltd."). Currently pending before the Court is

JLRNA's motion to dismiss the Second Amended Complaint ("SAC"), D.E. 41.[1]   The Court

reviewed the parties' submissions[2] and decided the motion without oral argument pursuant to Fed.

R. Civ. P. 78(b) and L. Civ. R. 78.1(b).   For the following reasons, JLRNA's motion to dismiss is

**GRANTED in part** and **DENIED in part**.

**I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[3]

Plaintiffs all owned a Land Rover sport utility vehicle[4] which experienced a turbocharger

("Turbocharger") failure.   "The Class Vehicles are equipped with a 2.0 liter in-line 4-cylinder

gasoline engine" with a turbocharger.  SAC ¶ 121.  The turbocharger allows the vehicle to "obtain

the kind of power that these kinds of utility vehicles require and are associated with."  *Id.* ¶ 122.

Plaintiffs allege that "Defendants chose to use a turbocharger assembly that was less expensive . .

---

[1] The Court previously issued an Opinion and Order granting JLRNA's motion to dismiss the
Amended Complaint without prejudice.  D.E. 35; D.E. 36.

[2] The submissions consist of JLRNA's motion to dismiss, D.E. 49 ("Br."), Plaintiffs' opposition,
D.E. 55 ("Opp."), and JLRNA's reply, D.E. 64 ("Reply").  JLR PLC and JLR Ltd. have also filed
a joint motion to dismiss, D.E. 70, which will be resolved in a separate, future opinion.

[3] The factual background is taken from Plaintiffs' Second Amended Complaint.  D.E. 41.  The
Court also considers the "Passport to Service," D.E. 11-2, which sets forth the relevant warranties,
and the "Dispute Resolution Supplement," D.E. 11-3, which provides for a dispute resolution
procedure as a prerequisite to bringing a claim under the Magnuson-Moss Warranty Act, as these
documents are integral to the SAC.  *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d
Cir. 2002) (explaining that when deciding a motion to dismiss under Rule 12(b)(6), a court may
rely on "a document *integral to or explicitly relied* upon in the complaint" (emphasis in original)
(citation omitted)); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196
(3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant
attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").
While JLRNA did not attach these documents to the present motion, they were attached to the
Motion to Dismiss the Amended Complaint, D.E. 11, and are relied upon in the present motion.
Thus, the Court accepts them as attachments to JLRNA's present motion.

[4] Plaintiffs allege that the following vehicles are the "Class Vehicles": "2012 through 2017 model
year 2.0 Liter Land Rover Range Rover Evoque; 2015 through 2017 model year 2.0 Liter Land
Rover Discovery Sport; and 2013 through 2015 model year 2.0 Liter Land Rover LR2[.]"  SAC ¶
3.

. and utilized lighter, inferior and less durable materials." *Id.* ¶ 125.  Specifically, Plaintiffs allege that "[t]he turbocharger housing and the exhaust manifold in the Class Vehicles are designed as a single component eliminating the need to bolt the two pieces together," which reduced the weight, but also reduced "the heat transfer area available to offset . . .  the extreme temperatures coming from the engine – which causes the premature failure of the Turbocharger[.]" *Id.* ¶ 125.  Plaintiffs add that "Defendants also chose a turbocharger assembly that incorporated the Turbocharger further into the engine and power train than the typical turbocharger assembly[.]" *Id.*  Plaintiffs also claim that "[t]he catalytic converter in the Class Vehicles is bolted onto the Turbocharger, and creates further stress and torque on the Turbocharger, increasing the rate at which the Turbocharger defect will manifest[.]" *Id.* ¶ 134.  As a result, according to Plaintiffs, "[w]hen exposed to . . . regular operational conditions, the single-assembly Turbocharger Defendants' chose to use in their engine design begins to crack[.]" *Id.* ¶ 5.  This cracking eventually causes "the turbocharger assembly to suddenly and catastrophically fail.  When this happens, the Class Vehicles lose engine power, causing a loss in the ability to accelerate, maintain speed, and/or adequately control the steering wheel or fully engage the brakes." *Id.*

Plaintiffs allege that JLRNA "distributes, markets, services, warrants, repairs, sells and leases passenger vehicles . . . including the Class Vehicles, in North America." *Id.* ¶ 110.  Plaintiffs contend that JLRNA knew or should have known that the Turbocharger was defective based on a variety of factors.  The Court discussed these factors in its prior Opinion, D.E. 35 ("Prior Op.") at 8-10, and incorporates that discussion by reference here.  Below, the Court discusses Plaintiffs' new allegations which they claim support knowledge.  In brief, the SAC's new allegations claim that Defendants should have conducted various industry-accepted tests which would have led them to discover the Turbocharger defect. *Id.* ¶¶ 142-51.

Each Class Vehicle came with multiple warranties. *See* D.E. 11-2. "Defendant's basic New Vehicle Limited Warranty provides bumper-to-bumper coverage for four years or 50,000 miles during which time Defendants will repair or replace components defective in materials or workmanship" (the "Limited Warranty"). SAC ¶ 166; D.E. 11-2 at 5. The vehicles also have a government mandated Federal Emissions Control System Warranty ("Federal Warranty"), which "provides a baseline of two years or 24,000 miles warranty that the vehicle will pass emissions inspections[.]" SAC ¶ 168; D.E. 11-2 at 11. JLRNA, however, voluntarily extended the Federal Warranty to four years or 50,000 miles so that it is coextensive with the Limited Warranty. D.E. 11-2 at 11. Another government mandated warranty, the California Emissions Control System Warranty[5] ("California Warranty"), provides coverage for "7 years, or 70,000 miles for select emissions-related components, including the turbocharger assembly." SAC ¶ 169; D.E. 11-2 at 7. To claim coverage under any of these warranties, the vehicle must be presented to an "authorized Land Rover retailer" or to "any facility authorized by Jaguar Land Rover North America, LLC, to perform such work or service" within the applicable time and mileage limitations. D.E. 11-2 at 21-22.

As to each named Plaintiff, the SAC alleges when each vehicle was purchased by the Plaintiff (with many having been bought used), the Plaintiff's state of citizenship and state where they purchased their vehicle (though not where the vehicle was registered), the model and year of the vehicle, and when the Turbocharger defect manifested. *See e.g.*, SAC ¶¶ 21-22, 25-26, 29-30, 33-34, 37-38.

---

[5] The California warranty only applies to vehicles registered in California, Connecticut, Delaware, Maine, Maryland, Massachusetts, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, Vermont, and Washington. D.E. 11-2 at 14. Plaintiffs do not allege where any Class Vehicle was registered. The Court, however, accepts the reasonable inference that each Class Vehicle was registered in the particular Plaintiff's state of citizenship.

On November 19, 2021, the Court dismissed the Amended Complaint without prejudice. D.E. 35; D.E. 36.  Plaintiffs filed a Second Amended Complaint on January 18, 2022.  D.E. 41. The SAC adds new factual allegations, adds eleven Plaintiffs, adds JLR PLC and JLR Ltd. as Defendants, and alleges new consumer protection causes of action under state law.  The present motions followed.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual allegations to state a claim that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims."  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).  In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).  Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth.  *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011).  The Court, however, "must accept all of the complaint's well-pleaded facts as true" and give a plaintiff the benefit of all reasonable inferences therefrom.  *Fowler*, 578 F.3d at 210.

III.    **ANALYSIS**

      **A.  Choice of Law**

      The parties have, again, provided no choice of law analysis in their briefing.  Instead, they chose to point out that their adversary had failed to do so, and both substantially proceed under New Jersey law.  Br. at 10 n.9; Opp. at 7 n.3; Reply at 1 n.1.  A choice of law analysis is a fact intensive inquiry that may not be suited for a motion to dismiss, particularly where the parties did not brief the issue.  *See, e.g.*, *Powell v. Subaru of Am., Inc.*, 502 F. Supp. 3d 856, 875 (D.N.J. 2020).  The Court will not decide the choice of law issue at this time, and will, as with the previous motion to dismiss, only apply New Jersey law to the instant motion.  *See* Prior Op. at 5.

      **B.  Breach of Warranty Claims**

        **1. Express Warranty**

      To state a claim for breach of an express warranty under New Jersey law, a plaintiff must allege "(1) that Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." *Francis E. Parker Mem'l Home, Inc. v. Georgia-Pacific LLC*, 945 F. Supp. 2d 543, 568 (D.N.J. 2013) (citing N.J. Stat. Ann. § 12A:2-313).  The Limited Warranty "provides bumper-to-bumper coverage for four years or 50,000 miles," whichever comes first, "during which time Defendants will repair or replace components defective in materials and workmanship."  SAC ¶ 166; D.E. 11-2.  The Federal Warranty was also extended to provide the same coverage period, and the California Warranty provides coverage as to the Turbocharger for seven years or 70,000 miles, whichever comes first.  SAC ¶¶ 168-69; D.E. 11-2.

The Court previously found that, in the Amended Complaint, Plaintiffs did not "adequately plead a claim for breach of an express warranty" because they failed to "allege that their turbochargers failed within the time or mileage limits of any of the express warranties." Prior Op. at 6-7. Plaintiffs now claim, however, that "Flynn-Murphy, De La Torre, Harrell, and Canizares, meet any applicable presentment and mileage requirements under the [California Warranty] . . . and the [Federal Warranty]." Opp. at 7.

The SAC has no allegations as to where any Plaintiff's vehicle is registered, and these four Plaintiffs are alleged to be citizens of New York, Pennsylvania, and North Carolina. SAC ¶¶ 29, 45, 49, 61. Assuming that these are the states in which the respective vehicles were registered, the California Warranty does not apply to vehicles registered in North Carolina, where Plaintiff Harrell is a citizen. D.E. 11-2 at 14. In any event, the SAC does not allege that Plaintiff Harrell ever presented her vehicle to an appropriate party for service of the Turbocharger, but rather that she brought her vehicle only to an "independent mechanic." SAC ¶ 62. Without alleging presentment to an authorized retailer or facility as required by the warranties, Plaintiff Harrell has not adequately pled breach of an express warranty.

The SAC also fails to allege breach of an express warranty as to Plaintiff De La Torre. The SAC alleges that Plaintiff De La Torre purchased a 2014 Land Rover *Evoque*, and later, without explanation, states that her 2016 Land Rover *Discovery Sport* experienced the defect. *Id.* ¶¶ 45-46. This inconsistency makes the allegations regarding De La Torres' vehicle implausible, and thus they fail to state a claim.

As to Plaintiff Canizares, the SAC alleges that, on or around March 1, 2020, he purchased a used 2016 vehicle but does not allege the date of the vehicle's first retail sale, which triggers the running of any warranty. *Id.* ¶ 29. The SAC alleges that Canizares' vehicle was presented for

service to a Land Rover dealership "approximately one year following [his] purchase" and with approximately 26,000 miles. *Id.* ¶ 30. Without more clarity as to the relevant dates, Plaintiffs have not adequately alleged that this presentment fell within the four-year limitation in the Limited Warranty or Federal Warranty. However, the California Warranty provides coverage for seven years or 70,000 miles. Because the vehicle is a model year 2016, it is a reasonable inference that presentment at some time in 2021 was less than seven years since the vehicle's initial retail purchase. As it appears that Plaintiff Canizares presented his vehicle for service to a Land Rover dealer within seven years of its initial retail purchase and with fewer than 70,000 miles, the SAC has adequately stated a claim for breach of the California Warranty as to him.

The SAC also sufficiently alleges a breach of the California Warranty as to Plaintiff Flynn-Murphy. The SAC alleges that Plaintiff Flynn-Murphy purchased a used 2015 vehicle and presented it for service to the dealer in April 2020 with approximately 20,000 miles. *Id.* ¶¶ 49-50. The SAC does not allege any date of first retail sale, which is the trigger for the running of the warranties. Without more specific dates, the SAC does not adequately allege presentment within the time limitations of the Limited Warranty or the Federal Warranty. However, because the vehicle is a model year 2015, it is a reasonable inference that when it was presented for service in April 2020, less than seven years had passed since its initial retail sale. Because the SAC also adequately alleges presentment within the time and mileage restrictions of the California Warranty as to Plaintiff Flynn-Murphy, the breach of express warranty claim proceeds as to that Plaintiff.[6]

---

[6] JLRNA also argues that Plaintiffs have failed to state a claim because "design defects" are not covered by the Limited Warranty. Br. at 15-17. The Court, however, found that Plaintiffs Flynn-Murphy and Canizares stated a claim for relief under the California Warranty, which does not appear to be limited to only defects in "materials" or "workmanship." D.E. 11-2 at 14 (stating that if certain parts, including the Turbocharger are "defective, the part will be repaired or replaced by Jaguar Land Rover North America, LLC" under the California Warranty). Even if the Court did reach that question, however, "[w]hether the alleged [defect] about which Plaintiffs complain were

As to the remaining Plaintiffs, the SAC alleges that "they presented their vehicles for service *prior to* the cataclysmic failure of the Turbocharger," which they claim should be sufficient to claim coverage for the Turbocharger under the warranties.  Opp. at 8 (emphasis added).  However, "latent defects discovered after the term of an express warranty cannot serve [as] a basis for a claim for the breach of an express warranty."  *Kuzian v. Electrolux Home Prods., Inc.*, 937 F. Supp. 2d 599, 611 (D.N.J. 2013) (citing *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 519 (D.N.J. 2008)); *see also Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 616 (3d Cir. 1995).  Thus, presentment for service of other issues with the vehicle while the Turbocharger defect was allegedly latent is insufficient to state a breach of express warranty claim.  Moreover, as Plaintiffs have not argued that any Plaintiff other than Flynn-Murphy, Canizares, Harrell, and De La Torre actually presented their vehicle to an authorized party for service of the Turbocharger within the time or mileage requirements of an applicable warranty, the remaining Plaintiffs have failed to state a claim.

Plaintiffs also argue "given Plaintiffs' ignorance of the Turbocharger Defect" and "JLRNA's knowledge of the inherent defect," presentment for service on other issues "prior to the cataclysmic failure of the Turbochargers . . . should be sufficient for Defendant (and its dealerships) to recognize the need for repair and replacement of the Turbocharger *under warranty*."  Opp. at 8 (emphasis in original).  The Court previously rejected Plaintiffs' similar argument because Plaintiffs had not adequately alleged that JLRNA "knew its engine was inherently defective."  Prior Op. at 9.  The same shortcoming persists.  While Plaintiffs added new allegations regarding vehicle testing and analyses, they base these allegations on admitted

caused by defective design or defective manufacture is a factual question which this Court cannot resolve on a motion to dismiss."  *In re Caterpillar, Inc., C13 and C15 Engine Prods. Liab. Litig.*, No. 1:14-cv-3722, 2015 WL 4591236, at *19 (D.N.J. July 29, 2015).

assumptions.  For instance, Plaintiffs allege: "*Assuming that* Defendants completed testing on an adequate and statistically significant quantity of their turbocharger assembly (as any reasonable [original equipment manufacturer] would)," such testing "*would have* been conducted involving exhaust temperatures and engine vibration" which "*would have* led to the failure of Defendants' turbocharger assembly and their knowledge of the Defect."  SAC ¶ 149 (emphasis added).  Further, Plaintiffs claim that testing "*should have been done* on turbocharger assemblies that were replaced under warranty."  *Id.* ¶ 150 (emphasis added).  Such allegations of what Defendants *might have* or *should have* done, which *could have* or *would have* led them to the conclusion that a defect existed is insufficient to allege that JLRNA had actual knowledge of the Turbocharger defect here.  For instance, in *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 F. App'x 94, 104 (3d Cir. 2013), the Third Circuit found that asserting that a defendant "should have been aware" of a defect "through its own '[b]ooks of [k]nowledge, internal testing, information on dealership repair orders, warranty data, [and] records of customer complaints'" was "insufficient to establish [defendant's] knowledge" where the plaintiff did not "provide any facts relating to the alleged books of knowledge, internal testing, or dealership repair orders."  Similarly, Plaintiffs have not alleged any specific facts as to the testing that JLRNA conducted or the results of that testing.  Plaintiffs merely claim that certain testing *should have* been conducted based on industry practice and that, *assuming* it was, it *would have* led to certain results and conclusions, which is insufficient.

Plaintiffs point to *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194 (D.N.J. 2020), to claim that knowledge is sufficiently pled where a plaintiff alleges that an auto manufacturer "would have" discovered an alleged defect had certain actions been taken.  Opp. at 37.  But *Ponzio* is distinguishable.  In that case, plaintiffs alleged that the defendant Mercedes "developed 'Mercedes SAE Standards and Testing'" which were specific to the defendant and were "'used in

connection with the testing of its vehicle, including . . . a test relating to the Coating/Painting  . . .'
and other various tests concerning the performance of the paint used on its vehicles." *Ponzio*, 447
F. Supp. 3d at at 227-28.  Additionally, plaintiffs in that case "explicitly allege[d] that 'Mercedes
*engaged* in at least *four years* of development and testing prior to utilizing" the allegedly defective
paint.  *Id.* at 228 (emphasis in original).  By contrast, Plaintiffs here only allege industry-accepted
pre-production testing that a "reasonable Original Equipment Manufacturer" would have
completed which "would have exposed the existence of the Turbocharger Defect."  SAC ¶ 142.
Plaintiffs continue that "[a]ssuming that Defendants completed testing on an adequate and
statistically significant quantity" of Turbochargers, such testing "would have led to the failure of
Defendants' turbocharger assembly and their knowledge of the Defect."  *Id.* ¶ 149.  Without more
specific allegations of what testing JLRNA engaged in specifically, *Ponzio* is distinguishable.

      Other auto defect cases where courts analyzed whether knowledge on the part of the
manufacturer was sufficiently pled demonstrate the shortcomings of this pleading.  For instance,
in *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, 295 F. Supp.
3d 927, 943 (N.D. Cal. 2018), the court considered allegations that an auto manufacturer
intentionally included "defeat devices" in its vehicles.  The defeat devices allowed the vehicle to
pass emissions inspections but would disable the emissions controls when the vehicle was engaged
in real-world driving conditions.  *Id.*  The court noted that "the thrust of the complaint is that there
was purposeful manipulation of the system . . . to achieve the deceptive result."  *Id.* at 1012.  This
"allegation of specific manipulation" made it "reasonable to infer knowledge on the part of
Defendants."  *Id.*  The court in *Counts v. Gen. Motors, LLC*, 237 F. Supp. 3d 572 (E.D. Mich.
2017), was faced with substantially similar allegations, and found that plaintiffs had sufficiently
alleged that "GM actively concealed and had exclusive knowledge of the alleged 'defeat device.'"

Those allegations are markedly different than what is alleged in the SAC.  Those courts were able to infer the manufacturer's knowledge from allegations of intentional manipulation and deceit, and from the fact that the alleged issue was immediately present when the vehicles were first used.  No such plausible allegations exist here, where Plaintiffs merely allege that "Defendants knew or should have known that the majority of failures would occur outside the warranty periods[.]"  SAC ¶ 236.  *See Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 250 (2d Cir. 1986) (stating that manufacturers "can always be said to 'know' that many parts will fail after the warranty has expired"); *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604 (3d Cir. 1995) (following *Abraham*).

*In re Caterpillar, Inc., C13 and C15 Engine Prods. Liab. Litig.*, No. 1:14-cv-3722, 2015 WL 4591236, at *3 (D.N.J. July 29, 2015), provides another useful comparison.  In that case, the court considered an alleged engine defect which "frequently and repeatedly render[ed] the vehicles inoperable," and which could not be fixed.  *Id.*  Plaintiffs alleged that "Caterpillar knew, or should have known, that the [engine component] could not function on [a] consistent and reliable basis," and pointed to "substantial warranty claims" which began shortly after sales commenced, "excessive failure rates within the first 100 hours of operation" and "pervasive failures as high as 65% in the first year."  *Id.*  Despite the allegations that "Caterpillar knew at the time of sale of an inherent defect . . . which was so pervasive that they could not have been surprised when purchasers experienced problems and initiated warranty claims immediately after the Engines hit the market," the court found the allegations insufficient to establish unconscionability.  *Id.* at *22.  Even so, a high rate of critical, irreparable failures that occur very soon after the engines begin to operate is far more indicative of the manufacturer's knowledge of the defect than what is alleged here.  Here, the Turbocharger defect allegedly manifested at vastly different times, often when the vehicle had

been driven for several years and tens of thousands of miles.  *See, e.g.*, SAC ¶ 22 (defect allegedly manifests after approximately six years and 66,700 miles), ¶ 42 (approximately seven years and 92,000 miles).  In other words, the alleged defect manifests at different times and mileages.  *See, e.g.*, *id.* ¶ 50 (after approximately five years and 20,000 miles), ¶ 66 (after approximately eight years and 50,000 miles), ¶ 101 (after approximately seven years and 103,550 miles).  Moreover, there are no allegations about the rate at which the Turbochargers fail, other than Plaintiffs' introductory allegation that "tens of thousands of Land Rover vehicles" have the defect.  *Id.* ¶ 1. Lastly, some of the Plaintiffs' allegedly defective Turbochargers did not fail until more than 100,000 miles.  *See id.* ¶ 85 (approximately 108,000 miles).  At best, Plaintiffs have plausibly pled that JLRNA was aware that at some uncertain point in the Turbocharger's life, it was subject to possible failure, but such allegations are insufficient.  *See Abraham*, 795 F.2d at 250 ("Manufacturers always have knowledge regarding the effective life of particular parts and the likelihood of their failing within a particular period of time. . . . A rule that would make failure of a part actionable based on such 'knowledge' would render meaningless time/mileage limitations in warranty coverage.").

Moreover, even if JLRNA's knowledge of the defect prior to sale was adequately pled, it is not clear that the outcome on the *prima facie* breach of express warranty claim would be different.  Courts in this District have "rejected the argument that, even though a defect does not manifest until after the expiration of a warranty agreement, a plaintiff can nonetheless maintain breach of warranty claims by alleging that the manufacturer knew about the defect at the time of the purchase."  *Alban v. BMW of N. Am.*, No. 09-5398, 2011 WL 900114, at *8-9 (D.N.J. Mar. 15, 2011) (dismissing breach of warranty claims where plaintiff alleged that defendant "knew of the defect . . . knew that the defect would not become apparent until after" the warranty term expired,

that defendant "concealed material information that prevented [plaintiff] from bargaining for a warranty that would cover the known defect," and that there was "a gross disparity in bargaining power"); *see also In re Caterpillar, Inc.*, 2015 WL 4591236, at *19-22 (finding that the "recent trend" in the District of New Jersey, which is "consistent with the prevailing approach elsewhere" is that a motion to dismiss should be granted "where plaintiffs allege[] a manufacturer's knowledge of a latent defect that would manifest outside the warranty period").  Because Plaintiffs similarly only plead knowledge of a defect that would (or could) become apparent outside of the warranty periods, they have not stated a claim for breach of express warranty.

As the Court previously held, Plaintiff's failure "to adequately plead that [JLRNA] knew of the purported turbocharger defect at the time of sale" also causes their argument that the warranty limitations are unconscionable to fail.  Prior Op. at 12.  "'[A] manufacturer's knowledge that a part may ultimately fail does not, alone, make a time/mileage limitation unconscionable.'" *Ponzio*, 447 F. Supp. 3d at 256 (quoting *Merkin v. Honda N. Am., Inc.*, No. 17-3625, 2017 WL 5309623, at *5 (D.N.J. Nov. 13, 2017)).  A plaintiff must plead additional facts to demonstrate unconscionability.  *See e.g.*, *Skeen v. BMW of N. Am., LLC*, No. 13-1531, 2014 WL 283628, at *13 (D.N.J. Jan. 24, 2014) (concluding that allegations that manufacturer knew engine component would fail, manipulated the warranty terms to avoid paying for repair, and unfairly took advantage of its disparate bargaining power were sufficient to allege unconscionability).

As Plaintiffs have again failed to plausibly plead that JLRNA knew of the Turbocharger defect at any relevant time or engaged in any other manipulative or deceitful conduct, the Court cannot find that the warranty limitations are unconscionable.

## 2. Implied Warranty

In its previous Opinion, the Court dismissed Plaintiffs' breach of implied warranty claim after finding that JLRNA "expressly limited these implied warranties" to the time period covered by the written warranties, as is permitted by New Jersey law, and that Plaintiffs had not "plausibly allege[d] that their turbochargers failed within the express warranty limitations." Prior Op. at 13; *see also Gladden v. Cadillac Motor Car Div., Gen Motors Corp.*, 83 N.J. 320 (1980) (citing N.J. Stat. Ann. § 12A:2-316). As noted above, the SAC also fails to adequately allege, with the exception of Plaintiffs Flynn-Murphy and Canizares as to the California Warranty, that any vehicle's Turbocharger failed and was presented for service within the time and mileage limitations of the written warranties. Thus, the breach of implied warranty claim is again dismissed as to all Plaintiffs other than Flynn-Murphy and Canizares.

As to Plaintiffs Flynn-Murphy and Canizares, the Passport to Service states that the implied warranty of merchantability is "limited, to the extent allowed by law, to the time period covered by the written warranties[.]" D.E. 11-2 at 6. JLRNA contends that "because Plaintiffs still have not alleged that the alleged defect manifested within the implied warranty period, . . . Plaintiffs' implied warranty claim should be dismissed." Br. at 17. As explained above, this argument fails as to Plaintiffs Flynn-Murphy and Canizares.

In its Reply, JLRNA further argues that "Plaintiffs' vehicles all had been in service for at least four years before they required a turbocharger replacement," which they claim prevents the application of the implied warranty of merchantability. Reply at 9. "A claim for breach of implied warranty must ordinarily arise shortly after purchase—there will typically be no claim for breach of implied warranty 'where plaintiffs have driven their cars without problems for years.'" *Skeen*, 2014 WL 283628, at *16 (quoting *Sheris v. Nissan N. Am. Inc.*, No. 07-cv-2516, 2008 WL

15

2354908, at *6 (D.N.J. June 3, 2008) (dismissing plaintiff's claim for breach of implied warranty of merchantability where plaintiff "was able to drive his [vehicle] for 20,618 miles and for about two years before he needed to replace his brake pads and rotors")). Plaintiff Flynn-Murphy's vehicle had been driven for approximately five years and 20,000 miles before the Turbocharger defect manifested. SAC ¶ 50. Plaintiff Canizares' vehicle had been driven for approximately five years and 26,000 miles before the Turbocharger defect manifested. *Id.* ¶ 30. Both time periods substantially exceed the two years present in *Sheris*, demonstrating that these Plaintiffs have failed to sufficiently plead that their vehicles were unmerchantable[7]. Thus, the implied warranty claim is dismissed.

### 3. Magnuson-Moss Warranty Act

"The [Magnuson-Moss Warranty Act ("MMWA")] provides a private right of action in federal court for consumers who are 'damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation . . . under a written warranty, [or] implied warranty.'" *Guardavacarro v. Home Depot*, No. 16-8796, 2017 WL 3393812, at *9 (D.N.J. Aug. 8, 2017) (quoting 15 U.S.C. § 2310(d)(1)). "MMWA claims are coextensive with underlying state law breach of warranty claims and are therefore, dependent on, and derivative of, said state claims for survival in a motion to dismiss." *Id.* (citing *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 254 (3d Cir. 2010)); *see also Tobin v. Samsung Elecs. Am., Inc.*, No. 18-12473, 2019 WL

---

[7] The Court recognizes that a brake defect, as was allegedly present in *Sheris*, and a Turbocharger defect, as is allegedly present here, are somewhat distinguishable. Plaintiffs allege that "[a]s an integrated component to the engine and power train, the Turbocharger is expected the last 12 years or 200,000 miles, which is as long as the useful life of the engine without the need for repair or replacement." *Id.* ¶ 126. A reasonable consumer would not anticipate that brakes would last for such an extended period of time. But the Court has not been presented with any authority that the length of the implied warranty of merchantability in the auto-defect context hinges on the expected life of the particular part at issue.

1399557, at *7 (D.N.J. Mar. 27, 2019) (explaining that the plaintiff's MMWA claims "stand or fall with [the claimant's] express and implied warranty claims under state law" (internal quotation omitted)).

The Court previously dismissed Plaintiffs' MMWA claim because the express and implied warranty claims had been dismissed.  The same result occurs here, with the exception of the allegations regarding Plaintiffs Flynn-Murphy and Canizares.  The MMWA claim is dismissed as to the remaining Plaintiffs because the Court has again dismissed their claims for breach of express and implied warranty.

JLRNA also argues that the MMWA claim should be dismissed because "Plaintiffs failed to exhaust JLRNA's mandatory, informal dispute resolution process."  Br. at 18.  Plaintiffs do not contest that such a dispute resolution process was required by the Dispute Resolution Supplement, D.E. 11-3, and the SAC does not allege compliance with the dispute resolution procedure.  Instead, Plaintiffs argue that this "affirmative defense" is not a proper reason to grant a motion to dismiss and that the requirement of the MMWA "is a practical one, and will yield when such proceedings would be futile."  Opp. at 18.

Under the MMWA, "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation" under a written or implied warranty "may bring suit for damages and other legal and equitable relief."  15 U.S.C. § 2310(d)(1).  The statute also, however, "declares it to be [Congress'] policy to encourage warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute settlement mechanisms."  15 U.S.C. § 2310(a)(1).  Where such a procedure is established by the warrantor, "a class of consumers may not proceed in a class action . . . unless the named plaintiffs . . . initially resort to such procedure."  15 U.S.C. § 2310(a)(3).

As to Plaintiffs' first argument, a court may consider granting a motion to dismiss based on an affirmative defense "if the predicate establishing the defense is apparent from the face of the complaint." *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 n.10 (3d Cir. 1978); *cf. Jones v. Bock*, 549 U.S. 199, 216-17 (2007) (holding that exhaustion of administrative remedies under the Prison Litigation Reform Act is an affirmative defense, but noting that "[w]hether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground"). In the SAC, Plaintiffs state that "the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied." SAC ¶ 271. This statement acknowledges by implication both the existence of the informal dispute resolution process and the fact that Plaintiffs did not make an attempt to use it. Those admissions coupled with the Dispute Resolution Supplement itself, which is integral to the pleading, demonstrate that the affirmative defense is present on the face of the SAC. Thus, the Court may consider whether the MMWA claim should be dismissed on this basis.

Plaintiffs appear to concede that they did not comply with the requirement of engaging in the informal dispute resolution process. They do claim, however, that such participation would have been futile. Opp. at 18. While Plaintiffs did not present the Court with any binding or in-circuit authority in support, the Court will not dismiss at this time.

### C. Unjust Enrichment

JLRNA again seeks dismissal of Plaintiffs' unjust enrichment claim. "To establish a claim for unjust enrichment under New Jersey law, a plaintiff must allege 'both that defendant received a benefit and that retention of that benefit without payment would be unjust.'" *Adamson v. Ortho-*

*McNeil Pharm., Inc.*, 463 F. Supp. 2d 496, 505 (D.N.J. 2006) (quoting *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994)).  A direct relationship between the plaintiff and defendant is essential to an unjust enrichment claim.  *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 283 (D.N.J. 2011).  But whether a direct relationship exists is "a term of art," and "will depend heavily on the facts of the individual case."  *DeFrank v. Samsung Elecs. Am., Inc.*, No. 19-21401, 2020 WL 6269277, at *23 (D.N.J. Oct. 26, 2020).  Accordingly, courts have determined that a direct relationship exists if a plaintiff plausibly pleads that the manufacturer is "something other than [an] innocent third-part[y]."  *Stewart v. Beam Glob. Spirits & Wine, Inc.*, 877 F. Supp. 2d 192, 200 (D.N.J. 2012).  In *Stewart*, for example, the plaintiffs purchased the relevant products from a third-party retailer.  *Id.* at 195.  The *Stewart* court concluded that the plaintiffs stated an unjust enrichment claim against the manufacturer defendants through allegations that the defendants "engaged in fraudulent conduct and misrepresented" the nature of the product at issue "through a direct nationwide advertising and marketing scheme."  *Id.* at 200; *see also DeFrank*, 2020 WL 6269277, at *23 (concluding that although they purchased the product from a third-party intermediary, the plaintiffs stated an unjust enrichment claim against a manufacturer based on plausible allegations that the manufacturer concealed a known defect that would render the product inoperable and engaged in a false and misleading marketing campaign by failing to disclose the defect).

In its prior Opinion, the Court dismissed Plaintiffs' unjust enrichment claim because Plaintiffs did not have a "direct relationship" with JLRNA and did "not sufficiently establish that Defendant is a wrongdoer" such that liability could attach.  Prior Op. at 18.  More specifically, in the absence of plausible allegations that "Defendant knew of and failed to disclose the turbocharger defect at the time of sale," the Amended Complaint did not "plausibly plead that Defendant is

19

something other than an innocent third-party," as is required to impose liability on JLRNA for unjust enrichment.  *Id.* at 18.

The SAC contains allegations regarding the relationship between JLRNA and its dealers. SAC ¶¶ 178-92.  However, the relationship between JLRNA and its dealers does not establish a direct relationship between Plaintiffs and JLRNA, as required for an unjust enrichment claim.  *See Green*, 279 F.R.D. at 283 ("Plaintiff alleges that he purchased a brewer.  Yet he fails to allege if he purchased the brewer directly from Defendants.").  Because there are again no plausible allegations of a direct relationship between Plaintiffs and JLRNA, and, as discussed above, insufficient allegations to plausibly plead that JLRNA "knew of and failed to disclose the turbocharger defect at the time of sale," Plaintiffs' unjust enrichment claim is again dismissed.

### D.  Fraud, Negligent Misrepresentation, and State Consumer Protection Claims

JLRNA likewise seeks dismissal of Plaintiffs' fraud and negligent misrepresentation claims, along with their state law consumer protection claims.  To state a common law fraud claim under New Jersey law, a plaintiff must plead (1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon; and (5) resulting damages.  *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997).  An omission can amount to fraud if a party has a duty to disclose. *Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 546 (D.N.J. 2013).  Moreover, "[i]ndependent of the standard applicable to Rule 12(b)(6) motions, Rule 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud."  *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002).  Thus, "a party must state with particularity the circumstances constituting fraud[.]"  Fed. R. Civ. P. 9(b).  A party alleging fraud must therefore support its allegations with factual details such as "the who, what,

when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (citation omitted).  Accordingly, "[t]o satisfy the particularity standard, 'the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'" *Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).

To state a negligent misrepresentation claim, a plaintiff must plead "that the defendant negligently made an incorrect statement upon which the plaintiff justifiably relied." *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 603 (D.N.J. 2016) (citation omitted).  An omission may also form the basis of a negligent misrepresentation claim provided that "'the breaching party owes an independent duty imposed by law.'" *Id.* (quoting *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 316 (2002)).  Under New Jersey law, however, "a party has no duty to disclose information to another party in a business transaction unless a fiduciary relationship exists between them, unless the transaction itself is fiduciary in nature, or unless one party 'expressly reposes a trust and confidence in the other.'" *N.J. Econ. Dev. Auth. v. Pavonia Rest., Inc.*, 319 N.J. Super. 435, 446 (App. Div. 1998) (quoting *Berman v. Gurwicz*, 189 N.J. Super. 89, 93-94 (Ch. Div. 1981)).

In its prior Opinion, the Court dismissed Plaintiffs' fraud, negligent misrepresentation, and state law consumer protection claims because Plaintiffs had not established a fiduciary relationship between themselves and JLRNA, had "failed to sufficiently allege that [JLRNA] knew of the alleged defect when any Plaintiff purchased their vehicle," and had failed to allege that any Plaintiff "relied on the relevant marketing materials or the fact that their vehicle contained the 4-cylinder turbocharged engine as a reason for purchasing their vehicle."  Prior Op. at 19-22.  Plaintiffs have not cured these deficiencies.

First, Plaintiffs have not alleged or argued that there is a fiduciary relationship between Plaintiffs and JLRNA, instead arguing that such a status is "irrelevant." Opp. at 30. But under New Jersey law, "a party has no duty to disclose information to another party in a business transaction unless a fiduciary relationship exists between them, unless the transaction itself is fiduciary in nature, or unless one party 'expressly reposes a trust and confidence in the other.'" *N.J. Econ. Dev. Auth.*, 319 N.J. Super. at 446 (quoting *Berman*, 189 N.J. Super. at 93-94); *see* Prior Op. at 19. Instead, Plaintiffs argue that JLRNA's knowledge of the defect, coupled with other partial disclosures which were allegedly inaccurate, created the obligation for JLRNA to correct the record. Opp. at 29. As the Court noted above, however, Plaintiffs have failed to adequately allege that JLRNA knew of the defect. Thus, this argument fails.

The Court also held in its prior Opinion that "no Plaintiff pleads that he or she relied on the relevant marketing materials or the fact that their vehicle contained the 4-cylinder turbocharged engine as a reason for purchasing their vehicle." Prior Op. at 22. Rather, Plaintiffs alleged then, and allege now, that each of them relied on representations "including some *like those* discussed below[.]" *See e.g.*, SAC ¶¶ 21, 25, 29, 33, 37 (emphasis added). Plaintiffs added allegations that they "relied on Defendants' statements or material omissions to this effect when purchasing" their vehicles, but these allegations are unconnected to specific statements made by JLRNA or any other Defendant. *See e.g.*, *id.* The Court again finds that "[w]ithout allegations demonstrating that Plaintiffs relied on the specific misrepresentations discussed in the [operative] Complaint, Plaintiffs do not satisfy the Rule 9(b) pleading standards." Prior Op. at 22. For these reasons, Plaintiffs' fraud and negligent misrepresentation claims, and their state law consumer protection claims, are dismissed.

### E.  Equitable Relief

Plaintiffs also seek injunctive relief, as they did in the Amended Complaint.  JLRNA argues that Plaintiffs are not entitled to such relief because they "do not allege that an adequate remedy at law is unavailable" and because they "fail to allege a sufficient likelihood of future injury so as to have standing to seek injunctive relief."  Br. at 38.  Because claims will proceed as to Plaintiffs Flynn-Murphy and Canizares, the Court will consider these arguments at this time.

Rule 8 permits a party to demand "relief in the alternative or different types of relief."  Fed. R. Civ. P. 8(a)(3).  Thus, Plaintiffs are entitled to seek equitable remedies, such as injunctive relief and restitution, in addition to a remedy at law.  *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004) (refusing to dismiss an unjust enrichment claim despite defendants' argument that equitable remedies "will not be granted where an adequate remedy at law exists").  The Court will not dismiss the request for equitable relief at this stage.

## IV.  CONCLUSION

Defendant Jaguar Land Rover North America, LLC's motion to dismiss, D.E. 49, is **GRANTED in part** and **DENIED in part**.  Plaintiffs' Second Amended Complaint is dismissed without prejudice, with the exception of the breach of express warranty claim as it relates to Plaintiffs Flynn-Murphy and Canizares pursuant to the California Warranty and the MMWA. Plaintiffs shall have thirty (30) days to file an amended complaint that cures the deficiencies noted herein.  If Plaintiffs do not file an amended complaint within that time, the claims dismissed herein will be dismissed with prejudice.  An appropriate Order accompanies this Opinion.

Dated: November 21, 2022

John Michael Vazquez, U.S.D.J.

23