**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JENNIFER BULLARD, NATALIE BUSH, LEO CANIZARES, LYNN COHN, RAYMOND DARBENZIO, JAMES DAVIES, LILIANA DE LA TORRE, LORETTA FLYNN-MURPHY, WILLIAM GILCHRIST, JAIME GONZALEZ, EMILY HARRELL, TOM HERBENER, JEFFREY HERZOG, RODNEY HOWARD, MANAGAYA KABBA, BILL LIQUORI, KELLY MCNEW, ANGELA PICK, SYDNEY POSTLE, LOLITHA SHEPHERD, and JEFFREY WILBUR, individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> JAGUAR LAND ROVER AUTOMOTIVE PLC, JAGUAR LAND ROVER LIMITED, and JAGUAR LAND ROVER NORTH AMERICA, LLC, <br><br> *Defendants*. | Civil Action No. 20-14464 <br><br> OPINION |

**John Michael Vazquez, U.S.D.J.**

In this putative class action, Plaintiffs allege that Defendants knew that a turbocharger in certain motor vehicles would eventually fail but did not disclose the defect to consumers. Twenty-one plaintiffs, on behalf of themselves and those similarly situated (collectively, "Plaintiffs"), sue Jaguar Land Rover North America, LLC ("JLRNA"); Jaguar Land Rover Automotive PLC ("JLR PLC"); and Jaguar Land Rover Limited ("JLR Ltd."). Currently pending before the Court is JLR

PLC and JLR Ltd.'s (the "UK Defendants") motion to dismiss[1] the Fourth Amended Complaint ("Fourth AC"),[2] under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).  D.E. 95.  The Court reviewed the parties' submissions[3] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b).  For the following reasons, the motion to dismiss under Fed. R. Civ. P. 12(b)(2) is **DENIED** and the motion to dismiss under Fed. R. Civ. P. 12(b)(6) is **GRANTED in part** and **DENIED in part**.

---

[1] The Court separately addressed a motion to dismiss under Rule 12(b)(6), D.E. 94, filed by JLRNA.  The Opinion in connection with that motion (the "JLRNA Opinion") is being filed concurrently with this Opinion.  The JLRNA Opinion is incorporated and referenced herein.

[2] The Court previously issued Opinions and Orders relating to the merits of the First Amended Complaint, D.E. 35, D.E. 36 and Second Amended Complaint, D.E. 80, D.E. 81.  While the present motion initially applied to the Third Amended Complaint ("TAC"), Plaintiffs later filed a motion to amend the TAC.  D.E. 104.  Plaintiffs request that the amendments "be deemed to have been made *nunc pro tunc*" to the TAC such that the motions to dismiss apply to the Fourth AC.  *Id.*  Defendants do not oppose the request.  For good cause shown, it is hereby granted.  Thus, the Court will consider the Fourth AC, D.E. 104-2, as the operative pleading as to the present motion.

[3] The submissions consist of the UK Defendants' motion, D.E. 95; Plaintiffs' opposition, D.E. 105; and the UK Defendants' reply, D.E. 114.

I. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[4]

The Court set forth a detailed factual background and procedural history in the JLRNA Opinion, which it incorporates by reference herein. The Court will supplement those facts below as necessary to decide the current motion.

II. **STANDARD OF REVIEW**

The UK Defendants first argue that the Court lacks personal jurisdiction. A defendant may move to dismiss a case for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). In such a motion, the plaintiff bears the burden of demonstrating "sufficient facts to establish that jurisdiction is proper." *Mellon Bank (E.) PSFS Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). In reviewing a motion to dismiss for lack of personal jurisdiction, a court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992). But when a defendant raises a jurisdictional defense, "a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287,

---

[4] The factual background is taken from the Fourth AC. D.E. 104-3. In deciding the Rule 12(b)(2) motion, the Court also considered the submitted declarations and exhibits. D.E. 95-2; D.E. 95-3; D.E. 95-4; D.E. 105-1. As to the 12(b)(6) motion, the UK Defendants largely rely on the arguments made by JLRNA. In deciding the motion to dismiss under Rule 12(b)(6), the Court, as it did in the JLRNA Opinion, considers the "Passport to Service," D.E. 11-2, which sets forth the relevant warranties, and the "Dispute Resolution Supplement," D.E. 11-3, which provides for a dispute resolution procedure as a prerequisite to bringing a claim under the Magnuson-Moss Warranty Act, as these documents are integral to the SAC. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (explaining that when deciding a motion to dismiss under Rule 12(b)(6), a court may rely on "a document *integral to or explicitly relied* upon in the complaint" (emphasis in original) (citation omitted)). Moreover, the Court considers the sample Monroney label, attached to JLRNA's motion, as a document on which Plaintiffs' claims are based. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

3

1302 (3d Cir. 1996) (citation omitted); *Pausch LLC v. Ti-Ba Enters.*, No. 13-6933, 2014 WL 5092649, at *3 (D.N.J. Oct. 9, 2014) (using declarations from both parties to conclude that contacts with the forum were insufficient for personal jurisdiction). In other words, to withstand a Rule 12(b)(2) motion, a plaintiff may not rely on the pleadings alone, as it "is inherently a matter which requires resolution of factual issues outside the pleadings." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). Therefore, in determining whether personal jurisdiction exists, the Court looks beyond the pleadings to all relevant evidence and construes all disputed facts in favor of the plaintiff. A plaintiff "must establish 'with reasonable particularity sufficient contacts between the defendant and the forum state.'" *Otsuka Pharm. Co. v. Mylan Inc.*, 106 F. Supp. 3d 456, 462 (D.N.J. 2015) (quoting *Mellon Bank*, 960 F.2d at 1223). In addition, a court "may always revisit the issue of personal jurisdiction if later revelations reveal that the facts alleged in support of jurisdiction remain in dispute." *Otsuka*, 106 F. Supp. 3d at 462 n.5 (citing *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 331 (3d Cir. 2009)).

The UK Defendants also seek, in the alternative, to dismiss under Fed R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual allegations to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district

courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true" and give a plaintiff the benefit of all reasonable inferences therefrom. *Fowler*, 578 F.3d at 210.

## III.   ANALYSIS

### A.  Personal Jurisdiction

A federal court must have both statutory and constitutional authority to assert personal jurisdiction over an out-of-state defendant. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). This two-step inquiry first looks to the forum state's long-arm statute, then to the Due Process Clause of the Fourteenth Amendment to determine if the exercise of jurisdiction is permitted. *Id*. *See also* Fed. R. Civ. P. 4(k)(1)(A) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant: who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located[.]"). In New Jersey the two steps are collapsed into a single inquiry because the New Jersey long-arm statute allows for the "exercise [of] jurisdiction over a non-resident defendant to the uttermost limits permitted by the United States Constitution." *Nicastro v. J. McIntyre Mach. Am., Ltd.*, 987 A.2d 575, 589 (N.J. 2010) (internal quotation marks and citation omitted), *rev'd on other grounds*, 564 U.S. 873 (2011). To establish personal jurisdiction, the Due Process Clause of the Constitution requires (1) minimum contacts between the defendant and the forum; and (2) that jurisdiction over the defendant comports with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).

5

"Personal, or in personam, jurisdiction, [generally] divides into two groups: 'specific jurisdiction' and 'general jurisdiction.'" *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 172 (D.N.J. 2016).[5]  "Specific jurisdiction 'depends on an affiliatio[n] between the forum and the underlying controversy (i.e., an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation).'" *Id*. (quoting *Walden v. Fiore*, 571 U.S. 277, 284 n.6 (2014)).  General jurisdiction "'permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit.'" *Id*. (quoting *Walden*, 571 U.S. at 284 n.6).  If a defendant is subject to a forum's general jurisdiction, the defendant can be sued there on any matter.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  If, however, a defendant is solely subject to specific jurisdiction, the defendant may only face suit in the forum if its activities concerning the forum are related to the claims in the suit.  *Id.*

### 1. General Personal Jurisdiction

General jurisdiction may be asserted over an out-of-state corporation "when [its] affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State."  *Id.* (citation omitted).  For an entity, its "place of incorporation and principal place of business are paradig[m] bases for general jurisdiction[.]"  *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (internal quotation marks and citation omitted).  An entity may also be subject to general jurisdiction "in an exceptional case" where its "operations in a forum other than its formal place of incorporation or principal place of business [are] so substantial and of such a nature as to render the corporation at home in that State."  *Id.* at 139 n.19.  If general jurisdiction is

---

[5] There are other means to establish personal jurisdiction, such as consent, waiver, or in-state service of an individual.  The other methods are not at issue.

established, a court may hear any and all claims against the defendant. *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919.

The parties appear to agree that both JLR PLC and JLR Ltd. are incorporated in England and Wales, respectively, and have their principal places of business in the United Kingdom. D.E. 95-2 ¶ 4; D.E. 95-3 ¶ 4. Additionally, Plaintiffs have not established that this is an "exceptional case" where New Jersey-based operations by the UK Defendants are so substantial as to render them at home in New Jersey. *Daimler*, 571 U.S. at 139 n.19. Thus, the UK Defendants are not subject to general jurisdiction in New Jersey.

Plaintiffs nevertheless argue that the Court may exercise general jurisdiction over the UK Defendants because they have an alter ego or agency relationship[6] with JLRNA, which is subject to general jurisdiction.[7] Generally, a parent corporation is not liable for the acts of its subsidiaries. *Portfolio Fin. Servicing Co. ex rel. Jacom Comput. Servs., Inc. v. Sharemax.com, Inc.*, 334 F. Supp. 2d 620, 626 (D.N.J. 2004) ("Liability will not be imposed on the parent corporation merely because of its ownership of the subsidiary[.]"). In limited circumstances, however, "abuse of the corporate form will allow courts to employ the 'tool of equity' known as veil-piercing." *Id.* (citation omitted). To pierce the corporate veil, the party seeking to do so much show the following:

> (1) the subsidiary was an alter ego or the parent "so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent" and (2) "the parent has abused the privilege of

---

[6] While alter-ego and agency are distinct concepts, Plaintiffs largely conflate them.

[7] JLRNA has its principal place of business in Mahwah, New Jersey, and thus the Court has general jurisdiction over it. D.E. 95-4 ¶ 5. JLRNA has not contested personal jurisdiction.

7

>incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise circumvent the law."

*High 5 Games, LLC v. Marks*, No. 13-7161, 2019 WL 3761114, at *6 (D.N.J. Aug. 9, 2019) (quoting *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 149 (3d Cir. 1988)). If these requirements are met, the jurisdictional contacts of a subsidiary may be imputed on the parent. *Seltzer v. I.C. Optics, Ltd.*, 339 F. Supp. 2d 601, 612-613 (D.N.J. 2004). There is, however, a "strong presumption against attributing a subsidiary's forum contacts to its corporate parent." *Id.* at 613.

Plaintiffs address the first prong of the piercing analysis by arguing that the UK Defendants have "control over JLRNA, including financial interdependence, coordinated use of JLRNA's headquarters for JLR business, and control over JLRNA's leadership." D.E. 105 at 16-17. Plaintiffs do not argue or present any evidence that the UK Defendants have "abused the privilege of incorporation" or otherwise used JLRNA to perpetrate fraud or injustice. Without establishing the second prong, Plaintiffs' alter-ego theory fails and the Court will not impute JLRNA's jurisdictional contacts onto the UK Defendants. *High 5 Games*, 2019 WL 3761114, at *7 ("Plaintiff makes no plausible allegations that the corporate structure of the relevant entities reflects fraud or an effort to circumvent the law. As a result, the Court does not have personal jurisdiction over the entities under the piercing the corporate veil/alter ego theories.").

Plaintiffs also argue that the Court's general jurisdiction over JLRNA may be imputed to the UK Defendants because JLRNA is their agent. This theory is "currently suspect," *Rickman v. BMW of N. Am. LLC*, 538 F. Supp. 3d 429, 438 n.4 (D.N.J. 2021) (citing *Daimler*, 571 U.S. at 135 n. 13),[8] and as noted there is a "strong presumption against attributing a subsidiary's forum

---

[8] *See Daimler*, 571 U.S. at 135 n.13 ("Agency relationships . . . may be relevant to the existence of *specific* jurisdiction. . . . As such, a corporation can purposefully avail itself of a forum by

8

contacts to its corporate parent," *Seltzer*, 339 F. Supp. 2d at 613.  The Court finds that Plaintiffs' agency theory is better suited to specific personal jurisdiction.  *Rickman*, 538 F. Supp. 3d at 438 n.4 (noting that "[a]gency theories remain relevant to purposeful availment").

### 2. Specific Personal Jurisdiction

Plaintiffs argue that the UK Defendants used JLRNA as "the Jaguar Land Rover store front in the United States."  Opp. at 18.  By Defendants' own statements, "JLRNA is the exclusive authorized distributor of new Jaguar and Land Rover vehicles to the public in the United States."  D.E. 95-4 ¶ 11.  Plaintiffs also note that, in press releases, Jaguar Land Rover (without more specificity as to which particular entity) has represented that "[t]he United States is one of the leading global markets for both Jaguar and Land Rover," D.E. 105-6 at 3, and has told media outlets that "[t]he North America market is approximately 20% of JLR global sales," D.E. 105-5 at 2.  In other words, the UK Defendants sell their vehicles to a New Jersey-based entity, JLRNA, with the expectation that JLRNA will service the North American market.  And this line of business is a relatively large portion of the organization's revenue, and it is exclusively conducted through JLRNA in New Jersey.  The UK Defendants structured their organization such that their products and revenues "invariably flowed through the New Jersey forum."  *Rickman*, 538 F. Supp. 3d at 437.  Thus, the UK Defendants "'purposefully directed [their] activities'"—*i.e.*, purposefully directed their vehicles, including the Class Vehicles—to New Jersey.  *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (quoting *Burger King*, 471 U.S. at 472); *see also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, - U.S. -, 141 S. Ct. 1017, 1026 (2021) (noting that minimum contacts are established where a defendant "'exploit[s] a market' in the forum State or

---

directing its agents or distributors to take action there. . . . It does not inevitably follow, however, that similar reasoning applies to *general* jurisdiction." (emphasis in original)).

enter[s] a contractual relationship centered there" (citation omitted)); *Opheim v. Volkswagen Aktiengesellschaft*, No. 20-02483, 2021 WL 2621689, at *4-5 (D.N.J. June 25, 2021) (finding that plaintiffs "at least made out a prima facie showing for purposeful availment" by showing that defendant did business with a New Jersey-incorporated American distributor and that the parent company had "an ongoing, substantial relationship with [the New Jersey distributor] as its gateway into the American market"); *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1239 (S.D. Fla. Mar. 30, 2021) ("Many courts have held that a foreign manufacturer that utilizes an American subsidiary to target distribution of its product to the forum state is appropriately subject to those states' jurisdiction." (collecting cases)); D.E. 95-4 ¶ 5.

The UK Defendants argue that *Rickman* is distinguishable because the court there relied on the fact that "significant coordination between [BMW NA, the New Jersey-based distributor and subsidiary, and BMW AG, the foreign parent] is plausible" and here there is "no reasonable finding that 'significant coordination' is afoot." D.E. 114 at 7-8. The *Rickman* court found "significant coordination" to be plausible based on "the intense focus and investment BMW AG puts on the American market." *Rickman*, 538 F. Supp. 3d at 438. Here, the same reasonable inference can be drawn. The Jaguar Land Rover organization derives approximately 20% of its business from the North American market, D.E. 105-5 at 2, and has also represented that "[t]he United States is one of the leading global markets for both Jaguar and Land Rover," D.E. 105-6 at 3. The US and North American markets are serviced exclusively through JLRNA, making "significant coordination" between JLRNA and the parent organizations, the UK Defendants, plausible.

More importantly, the UK Defendants purposefully availed themselves of doing in business in New Jersey through their direct relationship with JLRNA, whose principal place of

business is in the state.  To be clear, the Supreme Court has "rejected the assertion that a *consumer's* unilateral act of bringing the defendant's product into the forum State [is] a sufficient constitutional basis for personal jurisdiction over the defendant." *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 109 (1987) (emphasis in original) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)).  In other words, "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Id.* at 112.  But this is not such a case—here, the UK Defendants own actions are the basis for the Court's purposeful availment finding, and the contacts are not "random," "fortuitous," "attenuated," or the "unilateral activity of another party or a third person." *Burger King*, 471 U.S. 475 (citations omitted).  The UK Defendants are the 100% owner of a subsidiary entity headquartered in the forum, which they use to import and distribute their vehicles to the United States and North America.  That constitutes "an action of the defendant[s] purposefully directed toward [New Jersey]," *Asahi*, 480 U.S. at 112, and such "conduct and connection with [New Jersey] are such that [the UK Defendants] should reasonably anticipate being haled into court [in New Jersey]," *World-Wide Volkswagen*, 444 U.S. at 297.

      The UK Defendants further argue that the Court should rely on *Levy v. Jaguar Land Rover North America, LLC*, No. 19-13497, 2020 WL 563637, at *1 (D.N.J. Feb. 4, 2020).  In *Levy*, the court noted that the Plaintiffs "rel[ied] heavily on the fact that JLRNA, through its New Jersey headquarters, markets and distributes the same or similar cars to [Plaintiff's] car throughout the United States" in attempting to establish specific jurisdiction over parent companies.  *Id*. at *6.  The *Levy* court noted that this evidence "pertains to JLRNA, not to [the parent companies]." *Id*.  But Plaintiffs here make a different argument.  Plaintiffs argue that the act of using JLRNA as a "store front in the United States," D.E. 105 at 18, which activity is attributed to the UK Defendants

11

themselves, suffices to establish purposeful availment in New Jersey. As explained above, the Court agrees.

Having established that the UK Defendants have minimum contacts with New Jersey, Plaintiffs must next demonstrate that the claims "arise out of or relate to" those contacts. *See Ford Motor Co.*, 141 S.Ct. at 1026. The UK Defendants' contacts with New Jersey involve using a 100% owned New Jersey-based distributor to service the North American market. The Class Vehicles were allegedly sold by the UK Defendants to JLRNA and then distributed throughout the United States and eventually purchased by consumers, including Plaintiffs. Fourth AC ¶ 165; D.E. 95-2 ¶ 13; D.E. 95-3 ¶ 14; D.E. 95-4 ¶¶ 11-12. In other words, the UK Defendants purposefully directed the Class Vehicles into New Jersey through JLRNA and a defect in those vehicles allegedly damaged Plaintiffs. This is a sufficiently "strong 'relationship among the [UK Defendants], the forum, and the litigation.'" *Ford Motor Co.*, 141 S. Ct. at 1028 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Plaintiffs' claims arise out of or relate to the UK Defendants' contacts with New Jersey.

Finally, maintenance of the suit must comport with "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316 (citation and internal quotation marks omitted). As to this requirement, courts consider (1) "the burden on the defendant," (2) "the forum State's interest in adjudicating the dispute," (3) "the plaintiff's interest in obtaining convenient and effective relief," (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and (5) "the shared interest of the several States in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477 (internal quotation marks and citation omitted). The UK Defendants "bear the burden of showing the unreasonableness of an otherwise constitutional assertion of jurisdiction," but do not do so. *Mellon Bank*, 960 F.2d at

1226-27 ("[B]ecause [defendants] have failed to raise the issue in this court, we conclude that this is not an 'appropriate case' in which to consider the other factors bearing on 'fair play and substantial justice.'"). The Court will not address this issue *sua sponte*. Thus, Plaintiffs have established that the Court has specific personal jurisdiction over the UK Defendants.

### B. Failure to State a Claim

Because the Court has personal jurisdiction over the UK Defendants, it will now address the merits of the claims against them.[9] The UK Defendants argue at the outset that the Court should apply the same rulings it reaches on JLRNA's motion to dismiss to the claims against the UK Defendants. D.E. 95-1 at 17. The Court will address that argument as to each claim below and any additional arguments the UK Defendants properly raised.

First, the UK Defendants argue that Plaintiffs have failed to state a claim for breach of express warranty. D.E. 95-1 at 17. In the JLRNA Opinion, the Court held that Plaintiffs adequately pled that the express warranty limitations were unconscionable, and thus denied the motion to dismiss as to that claim. JLRNA Opinion at 7-16. Thus, the JLRNA Opinion does not serve as a basis to dismiss as to the UK Defendants. Plaintiffs have plausibly pled knowledge of the Turbocharger Defect on the part of the UK Defendants for the same reasons the Court found

---

[9] The UK Defendants argue that Plaintiffs exceeded the scope of the Court's leave to amend. D.E. 95-1 at 20-21. The Court disagrees. The Amended Complaint, D.E. 18, named only JLRNA. After granting JLRNA's motion to dismiss the Amended Complaint, the Court granted leave to "file an amended complaint that cures the deficiencies noted" in the Court's Opinion. D.E. 35; D.E. 36. In addition to amending the factual allegations, the Second Amended Complaint added the UK Defendants. D.E. 41. The Third Amended Complaint and the Fourth AC were filed before the Court addressed the UK Defendants' motion to dismiss the Second Amended Complaint. "A decision on whether to permit amendment of the pleadings generally falls within the District Court's discretion." *Mullin v. Balicki*, 875 F.3d 140, 150 (3d Cir. 2017). "The Court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Court's grant of leave to amend did not expressly or implicitly preclude Plaintiffs from adding new Defendants and the UK Defendants have not argued that any unfair prejudice would result from their inclusion at this stage.

such knowledge as to JLRNA. *Id.* at 9-13. The allegations regarding pre-production testing and post-production testing all apply to the Defendants collectively, *see, e.g.*, Fourth AC ¶¶ 195-203, and the Court declined to dismiss based on JLRNA's argument that Plaintiffs used impermissible group pleading because of the alleged interconnected nature of the Defendants' corporate structure. JLRNA Opinion at 12-13; *see In re Volkswagen Timing Chain Liab. Litig.*, No. 16-2765, 2017 WL 1902160, at *10 (D.N.J. May 8, 2017) ("Plaintiffs cannot be expected to know the exact corporate structure and degree of each Defendant's involvement, at this stage in the litigation and prior to discovery."); *Merkin v. Honda N. Am., Inc.*, No. 17-3625, 2017 WL 5309623, at *6 (D.N.J. Nov. 13, 2017); *Opheim*, 2021 WL 2621689, at *7 ("[T]he entities here are intertwined, and more discovery is needed to determine the precise role of each. In such circumstances, there is no need to dismiss the complaint."); *see also Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 226 (D.N.J. 2020).

The UK Defendants further argue that they are not "parties to any express warranty with any Plaintiff" and that "JLRNA is the party that extends the express warranty to consumers and that is obligated to fulfill its terms." D.E. 95-1 at 17. Because the parties only address these issues under New Jersey law, the Court does the same.

The Passport to Service, which sets forth the express warranties, states that "[t]he Land Rover warranties detailed in this booklet are issued by Jaguar Land Rover North America, LLC." D.E. 11-2 at 7. The UK Defendants are not listed as warrantors, and no warranty obligations appear to be imposed on them. In *Powell v. Subaru of Am., Inc.*, 502 F. Supp. 3d 856, 882 (D.N.J. 2020), the court found that the warranty at issue was made by Subaru of America and made "no reference to [the parent company, Subaru Corporation] as a warrantor." *Id.* Thus, the court held that "Plaintiffs' express warranty claims will be dismissed as to [Subaru Corporation]." *Id.*

Similarly, in *Luppino v. Mercedes-Benz USA, LLC*, No. 09-5582, 2013 WL 6047556, at *6 (D.N.J. Nov. 12, 2013), the court noted that the warranty was described as "obligating MBUSA, as opposed to [the parent] Daimler or Defendants collectively." The court found this to be a sufficient basis to dismiss the warranty claims against Daimler. *Id.* The same result ensues here. The express warranties in the Passport to Service, by their own terms, only obligate JLRNA. D.E. 11-2. As a result, the express warranty claim is dismissed as to the UK Defendants.

Plaintiffs nevertheless argue that (1) privity is not required for a breach of express warranty claim under New Jersey law, and (2) even if it were required, it is too fact-intensive to be decided at the motion to dismiss stage. D.E. 105 at 24-27. But these privity arguments miss the mark. While "New Jersey law does not have such a privity requirement," *Powell*, 502 F. Supp. 3d at 878, and a "buyer need not establish privity with the remote supplier to maintain an action for breach of express or implied warranties," *Spring Motors Distribs., Inc. v. Ford Motor Co.*, 489 A.2d 660, 663 (N.J. 1985), those principles do not create new obligations for a party who never agreed to such obligations. While a manufacturer that extends an express warranty may be liable under that warranty even though the consumer purchased the vehicle from a middleman, that rule does not mean that a manufacturer which never extended a warranty is liable for the middleman's warranty. *See Powell*, 502 F. Supp. 3d at 882. The fact that the UK Defendants did not sell the Class Vehicles directly to consumers (and thus did not establish privity of contract with them) is not the issue; what defeats the claim is that the UK Defendants never obligated themselves to the express warranties in the first place.[10]

---

[10] Indeed, the court in *Powell* noted New Jersey's lack of a vertical privity requirement and still dismissed on the basis that the parent was not a party to the warranty which was made by the subsidiary. *Powell*, 502 F. Supp. 3d at 878, 882.

Plaintiffs further rely on their allegations which characterize the warranties as being provided by the "Defendants" collectively. Fourth AC ¶¶ 236, 319, 321. But the Court need not accept these legal conclusions, and they are belied by the Passport to Service itself. *See* D.E. 11-2 at 7 (indicating that the warranties are "issued by Jaguar Land Rover North America, LLC").

The UK Defendants next argue that Plaintiffs have failed to state an implied warranty claim. D.E. 95-1 at 19. In the JLRNA Opinion, the Court dismissed the implied warranty claims as to all Plaintiffs and will do so here as to the UK Defendants as well for the same reasons. JLRNA Opinion at 16-18.

The UK Defendants argue that Plaintiffs' Magnuson-Moss Warranty Act ("MMWA") claim should be dismissed. D.E. 95-1 at 19. "MMWA claims are coextensive with underlying state law breach of warranty claims and are therefore, dependent on, and derivative of, said state claims for survival in a motion to dismiss." *Guardavacarro v. Home Depot*, No. 16-8796, 2017 WL 3393812, at *9 (D.N.J. Aug. 8, 2017) (citing *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 254 (3d Cir. 2010)); *see also Tobin v. Samsung Elecs. Am., Inc.*, No. 18-12473, 2019 WL 1399557, at *7 (D.N.J. Mar. 27, 2019) (explaining that the plaintiff's MMWA claims "stand or fall with [the claimant's] express and implied warranty claims under state law" (internal quotation omitted)). Because the express warranty and implied warranty claims are dismissed as to the UK Defendants, the MMWA claim is dismissed as well.

The UK Defendants also argue that Plaintiff has failed to state a claim for unjust enrichment for the same reasons expressed by JLRNA. D.E. 95-1 at 19. For the same reasons expressed in the JLRNA Opinion, the UK Defendants' motion to dismiss the unjust enrichment claim is denied. JLRNA Opinion at 21-22.

Finally, the UK Defendants argue that Plaintiff's fraud, negligent misrepresentation, and state consumer protection claims fail "for the same reasons explained in JLRNA's motion." D.E. 95-1 at 20. The Court's analysis in the JLRNA Opinion thus controls as to the UK Defendants as well. JLRNA Opinion at 23-30. Plaintiffs' claims for common law fraud (Count III) and negligent misrepresentation (Count IV) are dismissed. Plaintiffs' NJCFA claims in Counts I and II survive the motion, as do the consumer protection statutory claims in Counts IX through XXV.

## IV. CONCLUSION

For the reasons stated herein, the JLR PLC and JLR Ltd.'s motion to dismiss, D.E. 95 is **GRANTED in part** and **DENIED in part**. JLR PLC and JLR Ltd.'s motion to dismiss is **DENIED** as to personal jurisdiction. JLR PLC and JLR Ltd.'s motion to dismiss under Rule 12(b)(6) is **GRANTED without prejudice** as to Plaintiffs' express warranty, implied warranty, Magnuson-Moss Warranty Act, common law fraud, and negligent misrepresentation claims. JLR PLC and JLR Ltd.'s motion to dismiss under Rule 12(b)(6) is otherwise **DENIED**. Plaintiffs shall have thirty (30) days to file an amended complaint that cures the deficiencies noted herein. If Plaintiffs do not file an amended complaint within that time, the claims dismissed herein will be dismissed with prejudice. An appropriate Order accompanies this Opinion.

Dated: July 28, 2023

                                                                John Michael Vazquez, U.S.D.J.